# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-02164-SCT

*MIKE KIRK*

*v.*

*RANDY POPE AND DIXIELAND FOREST PRODUCTS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2005 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | W. ERIC STRACENER |
| | W. ANDREW NEELY |
| ATTORNEYS FOR APPELLEES: | CYNTHIA A. STEWART |
| | EDWARD J. PETERS |
| | EILEEN N. SHAFFER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 12/06/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal is taken from the Circuit Court of the First Judicial District of Hinds County's entry of a final judgment dismissing Plaintiff Mike Kirk's claims against Defendants Randy Pope and Dixieland Forest Products, Inc. Because we find that the circuit court erred in vacating the final judgment and dismissing Kirk's claims, and because the remittitur was not accepted by both parties as required under our recent opinion in ***Dedeaux v. Pellerin Laundry, Inc.***, 947 So. 2d 900, 908 (Miss. 2007), we reverse the judgment of

dismissal and remand the case to allow Pope the opportunity either to accept the remittitur or to have a new trial on the issue of damages only. On remand, all judgment proceeds are to be distributed to Kirk's bankruptcy estate, and judicial estoppel is to apply to Kirk, individually.

**FACTS**

¶2. On February 5, 1996, Mike Kirk filed a breach-of-contract action against Randy Pope and Dixieland Forest Products, Inc., (Dixieland) in the Circuit Court of the First Judicial District of Hinds County. Kirk was represented by attorney David Baria, and Pope was represented by attorney Leonard Melvin. On August 27, 1998, Kirk filed a Chapter 7 bankruptcy petition in United States Bankruptcy Court. Derek A. Henderson was appointed the Chapter 7 trustee. Kirk did not disclose the existence of his lawsuit against Pope and Dixieland in the bankruptcy proceedings.[1] On December 30, 1998, the bankruptcy case was closed, and Kirk was discharged.

---

[1] The record contains an affidavit from Barney Eaton, who served as Kirk's bankruptcy counsel. Eaton said that Kirk informed him "that he had filed a lawsuit in 1996, but after some initial discovery the lawsuit had been dormant since 1997." Eaton further stated that he did not include the lawsuit on the bankruptcy schedules because he presumed it had been dismissed for dormancy under Rule 41(b) of the Mississippi Rules of Civil Procedure. Eaton said Kirk later contacted him in October of 2002 to inform him that a judgment had been obtained on the case and asked whether anything needed to be done with the bankruptcy. Eaton said he advised Kirk that the bankruptcy would need to be reopened and that the judgment would become an asset of the estate. Eaton said Kirk authorized him to reopen the case.

2

¶3. Approximately four years after his discharge from bankruptcy, Kirk's breach of contract case was tried. The jury returned a verdict of $700,000 in favor of Kirk on October 18, 2002.[2] The final judgment was entered on October 28, 2002.

¶4. On October 25, 2002, the Bankruptcy Court entered an Order Reopening the Bankruptcy Case. Pope later discharged Leonard Melvin and obtained new counsel, Edward J. Peters and Cynthia Stewart. On November 25, 2002, Pope filed a notice of removal to the United States District Court for the Southern District of Mississippi on the basis that the action related to the bankruptcy estate. On January 23, 2003, the bankruptcy court entered an order approving a motion to employ David Baria as the trustee's special counsel and approving a contingency fee agreement. On June 24, 2003, the federal court remanded the case to Hinds County because the case already had been tried on the merits, and Kirk's counsel had been appointed as the trustee's representative to pursue the cause of action.

¶5. On November 19, 2003, the trial court granted a remittitur and reduced the judgment to $400,000, which Kirk accepted. On November 25, 2003, Pope filed a Motion for Reconsideration and for Stay of Judgment, which was set for hearing on December 12, 2003, apparently by ex parte order[3] of the trial court, which also stayed all matters. On December 1, 2003, the trial court entered another order granting Kirk additional time to respond to the motion, enjoining Kirk from executing on the judgment, and enjoining Pope from divesting any assets until the motion was heard. On December 9, 2003, the trial court entered an

---

[2] The judgment included $350,000 in compensatory damages and $350,000 in punitive damages.

[3] The order stated that the judge was contacted at home by counsel for Pope and that the order was necessary, in part, to prevent Kirk from executing on the judgment.

agreed order continuing the hearing on the motion for reconsideration and motion for stay of judgment until February 6, 2004, and continuing the injunctions on both parties. Prior to the hearing on February 6, 2004, Pope advised the trial court that there would be no hearing, as both parties were negotiating a settlement of the judgment.[4] During this time, neither party submitted an order or requested that the trial court reschedule a hearing regarding Pope's Motion for Reconsideration.

¶6.    Pope filed a legal-malpractice action against Melvin arising from previous representation in the instant case and executed a contingency-fee agreement with his new counsel, Peters and Stewart. Pope and Melvin settled the malpractice action for $275,000 on April 20, 2005. On May 5, 2005, Kirk filed a motion for contempt and for an injunction to freeze Pope's assets. That same day, Pope filed a motion asking the court to clarify the December 9, 2003, order,[5] and admitting that Pope had disbursed the proceeds from the malpractice settlement[6] and sold at least one asset.

¶7.    On May 17, 2005, the trial court entered an order declaring that neither party had requested a continuance of the injunction beyond February 6, 2004, and that it assumed the

---

[4] The trial court said by order that the attorneys for all parties advised that the parties were involved in settlement negotiations and asked that the hearing be cancelled. However, both parties dispute the trial court's characterization.

[5] Pope's Motion for Clarity asked the court to clarify "its Order dated December 8 and filed herein on December 11, 2003, . . . ." The order was attached as an exhibit to the motion and was, in fact, dated December 8 and stamped as a certified, true copy on December 11, 2003. However, the record indicates that the order was dated December 8 but filed on December 9, 2003.

[6] Pope acknowledged in his deposition that the majority of the settlement proceeds was paid to his new attorneys.

4

parties had reached a settlement, but reserved ruling on the issue of whether the December 11, 2003, order extended the injunction beyond February 6, 2004, until a hearing on the record scheduled for June 17, 2005. In the interim, the trial court enjoined the parties from executing on the judgment and from disposing of any assets. On May 24, 2005, the trial court entered an order denying Pope's Motion for Reconsideration and for Stay of Judgment and lifting the injunctions.

¶8. On September 14, 2005, Pope filed, in accordance with Rule 60(b) of the Mississippi Rules of Civil Procedure, a Motion for Relief from Judgment, asserting that Kirk was judicially estopped from pursuing his claims against Pope. Thereafter, the trial court vacated the final judgment by memorandum opinion and order on October 17, 2005, finding that Kirk's failure to disclose this case to the bankruptcy court effectively stripped Kirk of standing to pursue his claims against Pope. The trial court further found that it lacked jurisdiction over the case and dismissed the final judgment. The final judgment of dismissal was entered on November 4, 2005. Kirk's post-trial motions were denied and he filed this appeal.

**STANDARD OF REVIEW**

¶9. Issue I concerns a trial court's decision on a Rule 60(b) motion, which is subject to review under an abuse of discretion standard. ***Hartford Underwriters Ins. Co. v. Williams***, 936 So. 2d 888, 892 (Miss. 2006) (citing ***M.A.S. v. Mississippi Dep't of Human Services***, 842 So. 2d 527, 530 (Miss. 2003)). While deference is given to the trial judge, consideration of a Rule 60(b) motion also requires that a balance be struck between granting a party a hearing on the merits and the need to achieve finality. ***Id***. (citing ***Lose v. Illinois Cent. Gulf***

***R.R.***, 584 So. 2d 1284, 1286 (Miss. 1991)).  Furthermore, "[a]n abuse of discretion standard does not mean a mistake of law is beyond appellate correction," because a court abuses its discretion when it makes an error of law.  ***Browning Mfg. v. Mims***, 179 F.3d 197, 205 (5th Cir. 1999) (quoting ***Koon v. United States***, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 116 S. Ct. 2035 (1996), superseded by statute, Pub. L. No. 108-21, 117 Stat. 670).

¶10.    Issue II regards standing, which is a question of law reviewed under a de novo standard.  *See* ***City of Picayune v. Southern Reg'l Corp.***, 916 So. 2d 510, 519 (Miss. 2005) (citing  ***Brown v. Mississippi Dep't of Human Services***, 806 So. 2d 1004, 1005-06 (Miss. 2000)).

¶11.    Issue III concerns a trial court's imposition of judicial estoppel, which is subject to review under an abuse of discretion standard.  ***Superior Crewboats, Inc. v. Primary P & I Underwriters***, 374 F.3d 330, 334 (5th Cir. 2004) (citing ***Hall v. GE Plastic Pacific PTE Ltd.***, 327 F.3d 391, 396 (5th Cir. 2003).

¶12.    Issue IV concerns the remittur granted by the trial court.  While the subject case was pending appeal, this Court decided ***Dedeaux v. Pellerin Laundry, Inc.***, 947 So. 2d 900 (Miss. 2007).  In ***Dedeaux***, we overruled prior case law and held that a remittitur takes effect only if it is accepted by all parties.  ***Dedeaux***, 947 So. 2d at 908.  Under ***Dedeaux***, if all parties do not agree to the remittitur "then each party shall have the right to either demand a new trial on damages, or appeal the order asserting an abuse of discretion on the part of the trial judge."[7]  ***Id***.

--------

[7] The prior rule as set forth in ***Odom v. Roberts*** stated the following:

¶13.    Under Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure, "the Court may, at its option, notice a plain error not identified or distinctly specified."  M.R.A.P. 28(a)(3). Plain-error review is appropriate where there has been an intervening change in the law while a case is on appeal.  *United States v. Williamson*, 183 F.3d 458, 464 (5th Cir. 1999) (quoting *Johnson v. United States*, 520 U.S. 461, 117 S. Ct. 1544, 1548-49, 137 L. Ed. 2d 718 (1997)).  Plain-error review may be invoked where (1) a party has failed to preserve an error for appellate review and (2) a substantial right is affected.  *State Highway Comm'n of Miss. v. Hyman*, 592 So. 2d 952, 957 (Miss. 1991).  This Court has stated that a monetary interest is a substantial right.  *Id.*; *Miss. Mun. Liab. Plan v. Jordan*, 863 So. 2d 934, 941 (Miss. 2003).  Because the remittitur in this case affects a substantial right—specifically, a $400,000 judgment—plain-error review is appropriate.

## DISCUSSION

I.      Whether Pope's 60(b) Motion for Relief from Judgment was timely.

¶14.    Kirk asserts that Pope's 60(b) motion was not filed "within a reasonable time" from October 28, 2002, or from November 19, 2003—the dates on which the final judgment and remittitur were entered, respectively.  Kirk contends that the trial court erred in calculating

> [W]here the trial court has granted a remittitur, or, in the alternative, a new trial on the issue of damages only, the *plaintiff only* may elect (1) to reject the remittitur and have the case retried on the issue of damages only, (2) to appeal to this court on grounds the circuit court should not have granted the remittitur at all, or, alternatively, the remittitur granted was legally excessive, or, (3) to accept the remittitur. In such a case the *defendant's only procedural avenue* is that it may (cross) appeal to this court arguing that the trial court abused its discretion and that the remittitur was legally inadequate.

*Odom*, 606 So. 2d 114, 121 (Miss. 1992) (emphasis added).

7

the time from the May 24, 2005, order denying reconsideration, because Pope did not seek relief from that specific order and relief from that order would not have relieved Pope from the judgment.

¶15.    Pope filed a Motion for Relief from Judgment on September 14, 2005, and asked the trial court to vacate the October 28, 2002, judgment pursuant to Mississippi Rule of Civil Procedure 60(b)(1), (4) and (6).[8]  Under Rule 60(b), a court may relieve a party from a "final judgment, order, or proceeding" when "(4) the judgment is void" or for "(6) any other reason justifying relief from the judgment."  Miss. R. Civ. P. 60(b)(4), (6).  A motion pursuant to Rule 60(b)(4) or (6) must be made "within a reasonable time."  Miss. R. Civ. P. 60(b).

¶16.    Rule 60(b) is an extraordinary remedy and "is not an escape hatch for lawyers and litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies."  *Bruce v. Bruce*, 587 So. 2d 898, 904 (Miss. 1991).  Accordingly, a litigant should pursue other available remedies before requesting relief under Rule 60(b).

¶17.    On November 5, 2002—eight days after the entry of final judgment—Pope filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial. Pope's motion alleged errors in the denial of jury instructions, ineffective assistance of counsel, and error in allowing perjured testimony regarding Kirk's bankruptcy.  The motion also incorporated by reference every objection made during trial and pre-trial motions.[9]  On

---

[8] The trial court properly found that Pope had waived any argument pursuant to Rule 60(b)(1) of the Mississippi Rules of Civil Procedure.

[9] While not raised specifically as an objection, Pope challenged Kirk's right to pursue the claim during pre-trial motions *in limine*.  Pope argued that Kirk "forfeited [his right to

November 19, 2003, the trial court overruled Pope's Motion for Judgment Notwithstanding the Verdict and for New Trial. Subsequently, on November 25, 2003, Pope filed a Motion for Reconsideration and requested a stay of judgment. It was not until May 24, 2005, that the trial court entered an order denying Pope's Motion for Reconsideration and lifting all injunctions. Pope then filed his Motion for Relief from Judgment pursuant to Rule 60(b) on September 14, 2005.

¶18. Pope properly pursued all other remedies prior to requesting the exceptional relief afforded under Rule 60(b). While both parties had chosen not to proceed any further on all motions pending at the time of the May 24, 2005, order, a Rule 60(b) motion "proceed[s] on the assumption that the trial court has entered a valid and enforceable judgment which has become final." *Id*. Pope resorted to filing his Rule 60(b) Motion for Relief from Judgment only after the trial court's May 24, 2005, order in which his post-trial motions were denied and the final judgment became fully enforceable. Accordingly, the trial court correctly calculated the "reasonable time" period from the May 24, 2005, order.

¶19. The trial court ultimately granted Pope's Motion for Relief from Judgment pursuant to Rule 60(b)(4), holding the final judgment "null and void." While a Rule 60(b)(4) motion must be made "within a reasonable time," federal authority has interpreted this to mean that there is no effective time limit. ***Overbey v. Murray***, 569 So. 2d 303, 306 (Miss. 1990) (citing 7 J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 60.25[4] 2d ed. 1987). The rationale for having no effective time limit for a Rule 60(b)(4) motion is that "no amount of time or delay

pursue the suit] when he didn't list it in his assets when he filed individual bankruptcy."

9

may cure a void judgment." *Id*. Even so, Pope filed his 60(b) motion approximately four months after the court's May 24, 2005, order—well within the six-month time frame applicable to other provisions under Rule 60(b). *See* Miss. R. Civ. P. 60(b). Accordingly, we find that the trial judge did not abuse his discretion in finding that the 60(b) motion was timely.

**II.     Whether the circuit court erred in finding that because Kirk was no longer the real party in interest when he filed his bankruptcy petition, he lacked standing to pursue the claim.**

¶20.    Kirk asserts that the trial court failed to recognize the distinction between standing and real party in interest. Kirk argues that the simple fact that a party no longer is the real party in interest does not necessarily cause that party to lose standing in the traditional, jurisdictional sense.

### A.     Real party in interest.

¶21.    A real-party-in-interest defense must be timely and may be waived if tardily asserted. ***Gogolin & Stelter v. Karn's Auto Imports, Inc.,*** 886 F.2d 100, 102 (5th Cir. 1989); s*ee also* ***Rogers v. Samedan Oil Corp.,*** 308 F.3d 477, 483-84 (5th Cir. 2002) (failure to raise the assertion that plaintiff was not the real party in interest until day before trial constituted waiver); ***United HealthCare Corp. v. American Trade Ins. Co.***, 88 F.3d 563, 569 (8th Cir. 1996) (assertion at pretrial conference constituted waiver); ***Hefley v. Jones***, 687 F.2d 1383, 1388 (10th Cir. 1982) (assertion sixteen days before trial is untimely). Because the earliest Pope alluded to a possible real-party-in-interest defense was after jury selection and just prior to the start of the trial, we find that Pope waived any real-party-in-interest defense.

### B.     Standing.

¶22. While Pope waived any real-party-in-interest defense, standing is a "jurisdictional issue which may be raised by any party or the Court at any time." *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000) (citing *Williams v. Stevens*, 390 So. 2d 1012, 1014 (Miss. 1980)).

¶23. To have standing, this Court has stated, "there must be a present, existent actionable title or interest which must be completed at the time the cause of action is filed." *Id*. at 165 (quoting *Crawford Commercial Constructors, Inc. v. Marine Indus. Residential Insulation, Inc.*, 437 So. 2d 15, 16 (Miss. 1983)). Kirk had a valid cause of action for breach of contract when he first filed suit and therefore initially had standing to pursue the claim. However, once Kirk filed his bankruptcy petition, he could have standing only if there was a proper ratification by the bankruptcy trustee.

¶24. A debtor's cause of action that existed at the time of the filing of the bankruptcy petition is property of the bankruptcy estate. *Pruitt v. Hancock Med. Ctr.*, 942 So. 2d 797, 801 (Miss. 2006) (quoting *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992)). Property of the bankruptcy estate that is not abandoned and that is not administered in the bankruptcy proceeding remains property of the bankruptcy estate. 11 U.S.C. § 554(d). More specifically, the "[f]ailure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate." *Pruitt*, 942 So. 2d at 802 (quoting *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004)).

¶25. When Kirk filed his bankruptcy petition on August 27, 1998, Kirk's suit against Pope and Dixieland became property of the bankruptcy estate. *See Pruitt*, 942 So. 2d at 801. Because Kirk's claim is property of the bankruptcy estate, "the Trustee is the real party in

11

interest with *exclusive standing* to assert" the claim. ***Wieburg v. GTE Southwest Inc.***, 272 F.3d 302, 306 (5th Cir. 2001) (emphasis added); *accord* ***Pruitt***, 942 So. 2d at 802 (an unscheduled cause of action remains property of the bankruptcy estate with the bankruptcy trustee having "*exclusive standing* to assert the claim.").

¶26. While Kirk lacked standing, in his own right, to pursue the claim, a trustee may confer standing by proper ratification. ***Wieburg***, 272 F.3d at 307. A valid ratification requires the "ratifying party to authorize continuation of [the] action and agree to be bound by the result." ***Jenkins v. Wright & Ferguson Funeral Home***, 215 F.R.D. 518, 522 (S.D. Miss. 2003) (quoting ***Wieburg***, 272 F.3d at 307). A ratification also must satisfy the purpose of Rule 17(a),[10] which is to assure that the judgment will be final and that res judicata will protect the defendant from having to defend a separate action.[11] ***Id***.

---

[10] ***Jenkins*** was a case before the U.S. District Court for the Southern District of Mississippi and cites Rule 17(a) of the Federal Rules of Civil Procedure. However, with the exception of slight changes or deletions, Rule 17(a) of the Mississippi Rules of Civil Procedure tracks the language from Rule 17(a) of the federal rules.

[11] The Advisory Committee Notes to Rule 17(a) states that the ratification provision "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17(a) Advisory Committee Notes, 1966 Amendment. Many courts have limited ratification to such circumstances. *See* ***Wieburg***, 272 F.3d at 308. Other courts have been reluctant to rely on the Advisory Committee Notes to Rule 17(a). ***Eposito v. U.S.***, 368 F.3d 1271, 1275-77 (10th Cir. 2004); ***Jenkins***, 215 F.R.D. at 522. The federal court for the Southern District of Mississippi found the Advisory Committee Note to be in conflict with the Rule itself because Rule 17(a) "does not state or even imply that the real party in interest must have been difficult to determine or that an understandable mistake had been made." ***Jenkins***, 215 F.R.D. at 522 n.4. Because of the ambiguity and because this particular language from the Advisory Committee Note was not incorporated into the Comment to Rule 17(a) of the Mississippi Rules of Civil Procedure, we do not limit ratification to such circumstances.

¶27.   The Motion to Employ Special Counsel and Approve Contingency Agreement approved by the bankruptcy court stated that "[i]n order for the Trustee to effectively pursue the claim against [defendants], it is necessary of the Debtor to retain special counsel to pursue the claim on behalf of the bankruptcy estate." This language authorizes continuation of the action on behalf of the bankruptcy estate and therefore meets the first requirement for a valid ratification. However, the agreement does not expressly state that the trustee will be bound by the result or that Pope and Dixieland will be protected from having to defend a later lawsuit. Typically, this would invalidate the ratification. *Wieburg*, 272 F.3d at 307 (ratification invalid because it did not give any assurance to the defendant that res judicata would protect the defendant from having to defend against later claims by the trustee).

¶28.   Despite its deficiencies, the trustee's Motion to Employ Special Counsel constitutes a valid ratification due to the status of the case at the time the bankruptcy court approved the motion. When the bankruptcy court approved the motion to employ special counsel on January 23, 2003, Kirk already had obtained a judgment on the suit. The trustee's motion noted that a judgment already had been entered and, thus, implicitly agreed to be bound by the result. The trustee's acceptance of the judgment also protected Pope and Dixieland from having to defend a later, separate lawsuit.

¶29.   While ratification did not occur until after the judgment had been entered, the trial court retained jurisdiction to enter a valid judgment in the subject case. Standing is an aspect of subject matter jurisdiction. *Breeden v. Kirkpatrick & Lockhart LLP (In re The Bennett Funding Group, Inc.)*, 336 F.3d 94, 102 (2d Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)). The Fifth Circuit

13

has stated that if subject matter jurisdiction exists among the original parties, it remains intact after substitution. ***Ransom v. Brennan***, 437 F.2d 513, 516 (5th Cir.), cert. denied, 403 U.S. 904, 29 L. Ed. 2d 680, 91 S. Ct. 2205 (1971). The rationale is that "[a] substituted party steps into the same position of the original party." ***Id***. Under Rule 17(a), ratification is given the same treatment as substitution—each has "the same effect as if the action had been commenced in the name of the real party in interest." Miss. R. Civ. P. 17(a). Accordingly, the ratifying party "steps into the shoes" of the original party so that subject matter jurisdiction remains intact. Moreover, post-judgment ratifications have been deemed valid by other courts. *See **Knight v. New Farmers Nat'l Bank***, No. 90-6071, 1991 U.S. App. LEXIS 24819, slip op. (6th Cir. Oct. 15, 1991); ***Arabian American Oil Co., v. Scarfone***, 939 F.2d 1472, 1477 (11th Cir. 1991); ***Sun Refining & Marketing Co. v. Goldstein Oil Co.***, 801 F.2d 343, 345 (8th Cir. 1986).

¶30. Given that the ratification was valid, we must consider whether judicial estoppel applies.

**III. Whether the circuit court erred in finding that judicial estoppel applied to Kirk.**

¶31. Judicial estoppel is designed to protect the judicial system and applies where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." ***Browning Mfg. v. Mims***, 179 F.3d 197, 205 (5th Cir. 1999) (quoting ***Scarano v. Central RR. Co.***, 203 F.2d 510, 513 (3d Cir. 1953)). In order to protect the integrity of the judiciary, judicial estoppel "must be invoked in the Court in which the apparent self-serving contradiction occurred and in which the defense is first asserted." ***In re Dewberry***, 266 B.R. 916, 920 (Bankr. D. Ga. 2001) (bankruptcy court

14

determined that the district court had "exclusive jurisdiction" to impose judicial estoppel where the debtor had not listed the claim in his bankruptcy schedules).

¶32. The Fifth Circuit has stated three requirements for judicial estoppel: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *Superior Crewboats, Inc.*, 374 F.3d at 335.

¶33. Under the first requirement, the trial court determined that Kirk took inconsistent positions by initially failing to list the lawsuit on his bankruptcy schedules and then pursuing the lawsuit after his discharge from bankruptcy. In *Superior Crewboats, Inc.*, the Fifth Circuit found that the mere omission of a claim in bankruptcy filings is "tantamount to a representation that no such claim existed." *Superior Crewboats, Inc.*, 374 F.3d at 335 (citing *Browning Mfg.*, 179 F.3d at 210). Accordingly, Kirk's failure to list the lawsuit represented that no such suit existed and is inconsistent with his subsequent pursuit of the claim.

¶34. The trial court also found the second prong satisfied because the bankruptcy trustee and court relied upon Kirk's schedules in granting his discharge from bankruptcy. Because the bankruptcy court could only have granted Kirk's discharge based on the information before it, the court necessarily relied on the contents of Kirk's schedules. Thus, the second prong also is satisfied.

¶35. Finally, the trial court found that Kirk's non-disclosure of the lawsuit was not inadvertent. A debtor's non-disclosure is "'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Id*. (quoting *Browning Mfg.*, 179 F.3d at 210); *see also Mississippi Power & Light Co. v.*

15

***Cook***, 832 So. 2d 474, 482 (Miss. 2002) (the representation "must be willfully false, or must have the effect of misleading the other party to his injury . . . .").

¶36.   Kirk had knowledge of the undisclosed claim.  Around August of 1998, he told his bankruptcy attorney that he had filed a lawsuit in 1996, but that after some initial discovery, the lawsuit had been dormant since 1997.  Based on Kirk's information, his bankruptcy counsel assumed that the lawsuit had been dismissed under Mississippi Rule of Civil Procedure 41(b) based on dormancy and did not list the lawsuit on Kirk's bankruptcy schedules.

¶37.   The trial court determined that Kirk was less than candid with his bankruptcy attorney regarding the status of the lawsuit.  From the time Kirk filed his lawsuit in February 1996 until May 1997, activity on the suit included four notices of deposition and a Motion to Compel Production of Documents, which was denied by the trial court.  Regardless, once Kirk resumed pursuit of the claim, he had an affirmative duty to disclose the suit to the bankruptcy court. ***Id***. (citing ***Browning Mfg.***, 179 F.3d at 207-08) (the Bankruptcy Code and Rules impose an affirmative duty to disclose contingent and unliquidated claims, and the duty to disclose is continuous).  Yet Kirk's failure to list the lawsuit in his bankruptcy schedules was brought out during pre-trial motions *in limine* and on cross-examination not at Kirk's initiative, but by the defendants.  Even then, Kirk did not disclose the suit to the bankruptcy court until October of 2002, after he had obtained a final judgment.

¶38.   While we cannot be certain of Kirk's motivation, we find there was sufficient evidence for the circuit court to conclude that Kirk's non-disclosure was not inadvertent and that Kirk notified the bankruptcy trustee only because the defendants forced his hand.  We

16

cannot say that the circuit court abused its discretion in finding that Kirk intended to conceal his claim from the bankruptcy court in order to reap a windfall by preventing his creditors from recovering any proceeds of a potential judgment. *See id*. at 336. Therefore, we find that the circuit court did not err in finding that judicial estoppel applied to Kirk.

¶39. Even though judicial estoppel is appropriate, we must consider the impact that vacating the judgment would have on Kirk's creditors. *See **Jenkins***, 215 F.R.D. at 522. In ***Parker v. Wendy's Int'l, Inc.***, the Eleventh Circuit found that the bankruptcy trustee should not be judicially estopped in pursuing an undisclosed claim. ***Parker***, 365 F.3d 1268, 1272-73 (11th Cir. 2004). The Eleventh Circuit reasoned that the trustee had never taken an inconsistent position and was "not tainted or burdened by the debtor's misconduct." *Id*. at 1273. Nevertheless, ***Parker*** noted that, should the trustee recover more than the amount to satisfy all creditors, "judicial estoppel could be invoked by the defendant to limit recovery to only that amount and prevent an undeserved windfall from devolving on the non-disclosing debtor." *Id*. at 1273 n.4.

¶40. We adopt the rationale in ***Parker*** and hold that Kirk's bankruptcy trustee should not be judicially estopped from pursuing the claim. On remand, should the trustee recover more than the amount necessary to fully compensate Kirk's bankruptcy estate, we invoke judicial estoppel against Kirk individually to prevent him from recovering any proceeds of the judgment.

**IV.    The trial court's grant of a remittitur.**

¶41. On August 21, 2003, the trial court entered an order granting a new trial on the issue of damages. Kirk then filed a Motion for Reconsideration of the trial court's order granting

17

a new trial on the issue of damages and asked the court to leave the jury verdict intact. On November 19, 2003, the trial court issued an order granting Kirk's Motion for Reconsideration "contingent upon [Kirk's] acceptance of a remittitur of the trial verdict of $700,000 to $400,000 . . . ." Kirk accepted the remittitur, and the trial court entered a final judgment in the amount of $400,000 on November 19, 2003.

¶42.   The trial court acted in accordance with this Court's precedent at the time in granting the remittitur. In *Odom v. Roberts*, we held that *only the plaintiff* could elect to (1) reject the remittitur and have a new trial on the issue of damages only, (2) appeal to this Court on the grounds that the trial court should not have granted the remittitur or that the remittitur granted was legally excessive, or (3) accept the remittitur. *Odom*, 606 So. 2d 114, 121 (Miss. 1992). The only procedural remedy afforded to the defendant under the prior rule was to "(cross) appeal to this court arguing that the trial court abused its discretion and that the remittitur was legally inadequate." *Id*.

¶43.   While the subject case was pending appeal, this Court adopted a standard which requires that a remittitur take effect only if it is accepted by *all* parties. *Dedeaux v. Pellerin Laundry, Inc.*, 947 So. 2d 900, 908 (Miss. 2007) (emphasis added). Furthermore, "[i]f all the parties do not agree to . . . the remittitur, then each party shall have the right to either demand a new trial on damages, or appeal the order asserting an abuse of discretion on the part of the trial judge." *Id*. Because this Court retroactively applies newly-enunciated rules of law to cases that are pending trial or that are on appeal, we are compelled to apply the standard set forth in *Dedeaux* to the subject case. *Thompson v. City of Vicksburg*, 813 So. 2d 717, 721 (Miss. 2002).

18

¶44. Under the rule announced in *Dedeaux*, Pope could have chosen to: (1) accept the remittitur; (2) demand a new trial on damages; or (3) appeal the order asserting an abuse of discretion on the part of the trial judge. *See Dedeaux*, 947 So. 2d at 908. Pope did not agree to accept the remittitur, as evidenced by his Motion for Reconsideration and for Stay of Judgment filed shortly thereafter on November 25, 2003. Pope's Motion for Reconsideration and for Stay of Judgment stated that by granting the remittitur, the trial judge had recognized Pope's lack of sufficient legal representation and that "all compensatory and punitive damages should be set aside and a new trial should be granted based on the ineffective counsel issue." Kirk himself notes that Pope was "apparently aggrieved" by the trial court's ruling on the remittitur.

¶45. Had the rule in *Dedeaux* been in effect at the time, Pope would have had the right to demand a new trial on damages. *See Dedeaux*, 947 So. 2d at 908-10 (if all parties do not agree to an additur or remittitur, a new trial on damages is a matter of right that should be available to any party who requests such new trial). Because Pope was procedurally barred from demanding a new trial on damages, we find that he should be afforded such opportunity on remand.[12] *See id.* at 909-10.

¶46. We remand this case for compliance with our recent decision in ***Dedeaux v. Pellerin Laundry, Inc.***, 947 So. 2d 900 (Miss. 2007).

---

[12] Even under then-existing case law, Pope could have chosen to appeal the order granting the remittitur by asserting an abuse of discretion by the trial judge. *See Odom*, 606 So. 2d at 121. However, Pope elected not to file such an appeal. Accordingly, on remand, Pope is barred from appealing the order granting the remittitur dated November 19, 2003. *See Tandy Electronics, Inc. v. Fletcher*, 554 So. 2d 308, 311 (Miss. 1989) ("[T]hirty-day rule for perfecting an appeal is in the nature of a statute of limitations.").

# CONCLUSION

¶47. Because we find that the circuit court erred in vacating the final judgment and dismissing Kirk's claims, and because the remittitur was not accepted by both parties as required under our recent opinion in *Dedeaux v. Pellerin Laundry, Inc.*, we reverse the judgment of dismissal and remand the case to allow Pope either to accept the remittitur or to have a new trial on the issue of damages only. On remand, all judgment proceeds should be distributed to Kirk's bankruptcy estate, and the circuit court's final judgment should state that judicial estoppel applies to Kirk, individually, so that he is prohibited from collecting any proceeds of any judgment ultimately awarded.

¶48. **REVERSED AND REMANDED.**

**SMITH, C.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J.**

**GRAVES, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶49. Because the majority ignores both relevant portions of the record and the applicable law, I must dissent in part.[13] I concur that Pope waived a real-party-in-interest defense and that proper ratification occurred. I further concur that the trial court erred in vacating the final judgment and dismissing Kirk's claims. However, I disagree with the majority's

---

[13]I note that the majority follows its recent and inexplicable trend and finds that this matter should be reversed and remanded for a new trial as to damages. *See* ***Beverly Enterprises, Inc. v. Reed***, 961 So. 2d 40 (Miss. 2007). *See also* ***Community Hosp. v. Goodlett***, 2007 Miss. LEXIS 528 (Miss. 2007); ***Smith v. Captain D's, LLC***, 963 So. 2d 1116, 1117 (Miss. 2007) and ***Century 21 Maselle & Assocs. v. Smith***, 965 So. 2d 1031 (Miss. 2007).

finding that the trial court correctly found that the motion pursuant to Rule 60(b) of the Mississippi Rules of Civil Procedure was timely. I further disagree with the majority that the trial court did not err in finding that judicial estoppel applied to Kirk. Moreover, I disagree with the majority's finding that both parties did not agree with the remittitur. Because I would reverse and render, reinstating the prior judgment, I respectfully concur in part and dissent in part.

*Timeliness of Rule 60(b) Motion*

¶50. Pope filed a Motion for Relief from Judgment on September 14, 2005, and asked the trial court to vacate the October 28, 2002, judgment. A motion pursuant to Rule 60(b)(4) or (6) must be made within a reasonable time. M.R.C.P. 60(b). Kirk asserts that September 14, 2005, is not within a reasonable time from October 28, 2002, or from November 19, 2003. Kirk further asserts that the trial court erred in calculating the time from the May 24, 2005, order denying reconsideration because Pope did not seek relief from that order and relief from that order would not have relieved Pope from the judgment. I agree.

¶51. In **Bruce v. Bruce,** 587 So. 2d 898, 904 (Miss. 1991), this Court, quoting **Stringfellow v. Stringfellow**, 451 So. 2d 219, 221 (Miss. 1984), said:

> Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances, and that neither ignorance nor carelessness on the part of an attorney will provide grounds for relief. . . . Additionally, it has been said that a party is not entitled to relief merely because he is unhappy with the judgment, but he must make some showing that he was justified in failing to avoid mistake or inadvertence; gross negligence, ignorance of the rules, or ignorance of the law is not enough.

**Bruce**, 587 So. 2d at 904. Further, this Court said:

21

No doubt there is overlap between the rules – we know of no grounds for relief within Rule 60 that are not also grounds for relief under Rule 59(e), if only they be timely sought – but, fundamentally, Rule 60(b) is not an escape hatch for lawyers and litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies. Rule 60(b) is designed for the extraordinary, not the commonplace.

A loose but apt analogy may be found in our criminal practice. A Rule 59(e) motion is the functional equivalent of a motion for a new trial or, on appeal, of a petition for rehearing. A Rule 60(b) motion is the functional equivalent of an application for post-conviction relief.

*Id.*

¶52. Pope asked for relief from the October 28, 2002, final judgment. However, the trial court later granted a remittitur and entered a subsequent final judgment on November 19, 2003. The motion for relief from judgment was not filed until September 14, 2005. Rule 60(b) requires the motion to be made within a reasonable time. M.R.C.P. 60(b). The September 14, 2005, motion was not filed until nearly two years after the final judgment, on November 19, 2003. This Court has found that a Rule 60(b) motion filed two years after judgment was not filed within a reasonable time. *See **Hinds Co. Bd. of Supervisors v. Common Cause of Mississippi***, 551 So. 2d 107, 119 (Miss. 1989). Therefore, Pope's Rule 60(b) motion was not timely filed.

¶53. The majority opinion states that Pope filed a motion for JNOV eight days after the entry of the judgment. Pope's motion for JNOV failed to raise any judicial estoppel argument. The majority says that Pope's motion for JNOV incorporated by reference Pope's "challenge" during the hearing on the motion in limine. However, the crux of Pope's challenge was to establish "Kirk's general inability to operate a business successfully." Pope

22

did mention Kirk's failure to list the asset on his bankruptcy schedule and then agreed that it was a legal question for the trial court to decide as opposed to a question for the jury.

¶54. Further, the majority clearly disregards the facts in this case. The majority finds that Pope properly pursued all other remedies. However, prior to the hearing on the motion for reconsideration, **"Pope advised the trial court that there would be no hearing and that the defendants had abandoned their effort to have the court reconsider its judgment."** (Emphasis added). Moreover, the May 24, 2005, order of the trial court summarily denied all pending motions, finding that the parties "**do not wish to proceed any further with respect to all motions**" set to be heard.

¶55. The record indicates that Pope failed to pursue procedural remedies under other rules and that Pope was unable to show any justification for his failure to do so. In *Bruce*, this Court also said: "Rule 60(b) motions, on the other hand, proceed on the assumption that the trial court has entered a valid and enforceable judgment which has become final." *Bruce*, 587 So. 2d at 904. However, Pope asserts the opposite – that there was never a valid and enforceable judgment. Ironically, the majority quotes this very language from *Bruce* regarding the assumption of a valid and enforceable judgment to overcome the fact that Pope failed to pursue all other remedies and abandoned his claims. Then, in the very next paragraph, the majority contradictiously maintains that the judgment is void to overcome the untimeliness of the Rule 60(b) motion. The majority cites *Overbey v. Murray*, 569 So. 2d 303 (Miss. 1990), for the proposition that federal courts have found no effective time limit for a Rule 60(b)(4) motion to a void judgment. However, in *Overbey*, this Court also said: "In defining a void judgment, this Court has repeated the federal rule, which states that 'a

23

judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Id.* at 306. That is not the case here.

¶56. Further, because Pope failed to comply with the requirements of Rule 60(b), he is now estopped from asserting that the final judgment should be vacated. Moreover, because the judgment was valid for other reasons stated herein, the trial court abused its discretion in vacating it. Notwithstanding the untimeliness of the Rule 60(b) motion, I address the issues alternatively herein.

*Standing versus Real Party in Interest*

¶57. In its Memorandum Opinion and Order Vacating Final Judgment, the trial court found:

> Kirk's claim against these defendants became an asset of his bankruptcy estate when he filed his petition on August 27, 1998. Kirk's failure to list this pending lawsuit on the bankruptcy schedules left that interest in the bankruptcy estate. Derek Henderson, as trustee, became and still remains the real party in interest and possessed sole standing to pursue the claim from and after August 27, 1998. Conversely, Mike Kirk forever lost standing to do so from and after that date.

As a result, the trial court found that it lacked jurisdiction to enter a judgment and rendered the judgment void.

¶58. Kirk correctly asserts that the trial court failed to recognize the distinction between standing and real party in interest.[14] The trial court held that the judgment was void because

_____

[14]Pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, which says:
Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee *of an express trust*, a party with whom or in whose name a contract has been made for the benefit of

24

the court lacked jurisdiction, finding: "Unfortunately for Kirk, the Mississippi Supreme Court has specifically held: 'Standing is a jurisdictional issue which may be raised by any party or the court at any time,' even by the appellate courts for the first time on appeal." (Citing *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000)).

¶59. To have standing, this Court has said, "there must be a present, existent actionable title or interest which must be completed at the time the cause of action is filed." *City of Madison,* 763 So. 2d at 165 (citing *Crawford Commercial Constructors, Inc. v. Marine Indus. Residential Insulation, Inc.*, 437 So. 2d 15, 16 (Miss. 1983) and *American Book Co. v. Vandiver*, 181 Miss. 518, 178 So. 598 (1938)). In *City of Madison,* Bryan's appeal stemmed from the City of Madison's failure to approve a building permit for Bryan to build on certain property when Bryan had no actual title, interest in, or option to purchase said property. This Court found that Bryan lacked standing because he was unable to demonstrate that the City's action had an adverse effect on property in which he had an interest. *Id*.

---

> another, or a party authorized by statute may sue in *that person's own name without joining* the party for whose benefit the action is brought*; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States*. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a). (Emphasis added). Further, with the exception of slight changes or deletions in the italicized portions, Rule 17(a) of the Mississippi Rules of Civil Procedure tracks this language.

¶60. Although courts have used the term *standing* in analyzing real-party-in-interest cases, courts have also clearly distinguished standing and real party in interest by their analysis solely under real party in interest or by specific language, such as the following:

> The [real party in interest] rule is similar to, though distinct from, the requirement that the plaintiff have standing to sue, in that both standing and real party in interest 'are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.' 6A Charles Alan Miller et al., *Federal Practice and Procedure* § 1542 (2d ed. 1990).

*Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993).

¶61. In distinguishing standing and real party in interest, the United States Bankruptcy Court for the Eastern District of Texas said:

> Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle. *6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure* § 1542 (1990). . . .  The standing doctrine, unlike Rule 17, relates only to the public law context.  Rule 17 is implicated in suits between private parties. See *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1147 (6th Cir. 1975). ["The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S. Ct. 1942, 1952, 20 L. Ed. 2d 947 (1968).  Since standing refers to identifying the proper litigant in a suit, it is related but not identical to the concept of the real party in interest. The former doctrine usually applies to "public" suits and the latter to "private" ones.] *Lucas v. Lucas*, 946 F.2d 1318, 1322 n 6 (8th Cir.1991) ("'Standing' is a constitutional doctrine regarding one's right to challenge a governmental action"). . . .  The Court is of the opinion that standing is not an appropriate objection in this particular action given no governmental action. Therefore, the objection to standing must be denied.

*Reynolds v. Feldman (In re Unger & Assocs.*), 292 B.R. 545, 550-551 (Bankr. D. Tex. 2003).

¶62.    The fact that a party is no longer the real party in interest does not necessarily cause that party to lose standing in the traditional, jurisdictional sense. Kirk had a valid action against Pope for breach of contract. Kirk did not file his bankruptcy petition until some two and a half years after he filed this cause of action. Kirk clearly had standing to file this cause of action.

¶63.    The question then becomes whether Kirk ever lost his status as the real party in interest to pursue the action. Upon filing bankruptcy, Chapter 7 debtors are no longer the real party in interest for purposes of pursuing pre-petition claims. *See Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) ("Because the claims are property of the bankruptcy estate, the Trustee is the real party in interest with exclusive standing to assert them.").

¶64.    Courts have consistently found that this issue is governed by Rule 17(a), as stated herein, which requires that "every action shall be prosecuted in the name of the real party in interest." *See Wieburg*, 272 F.3d at 306. Wieburg filed for bankruptcy after the events giving rise to her cause of action occurred. The Fifth Circuit Court of Appeals found Wieburg's claims to be the property of the bankruptcy estate and found that they should have been disclosed in Wieburg's bankruptcy schedules. "Because the claims are the property of the bankruptcy estate, the Trustee is the real party in interest with exclusive standing to assert them." *Id.* However, the court further found the district court's dismissal of the action to be improper pursuant to the following:

> The last sentence of Rule 17(a) provides that "no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for

27

ratification of commencement of the action by, or joinder or substitution of, the real party in interest." FED. R. CIV. P. 17(a).

*Id.* at 308. The court further found:

> In accordance with the Advisory Committee's note, most courts have interpreted the last sentence of *Rule 17(a)* as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult. . . . *Feist [v. Consolidated Freightways Corp.],* 100 F. Supp. 2d [273] at 276 ("Rule 17(a) should not be applied blindly to permit substitution of the real party in interest in every case. In order to substitute the trustee as the real party in interest, Plaintiff must first establish that when he brought this action in his own name, he did so as the result of an honest and understandable mistake."). . .

*Id.*

¶65. The court expressed concern that the dismissal of the action would prevent Wieburg's creditors from having any possibility of recovery. In vacating the district court, the court held:

> More importantly, it is unclear whether the district court considered the impact of the dismissal on Wieburg's creditors. . . .Under these circumstances, and in light of Rule 17(a)'s purpose of preventing forfeitures, we believe that it was an abuse of discretion for the district court to dismiss the action without explaining why the less drastic alternatives of either allowing an opportunity for ratification by the Trustee, or joinder of the Trustee, were inappropriate.

*Id.* at 309.

¶66. The United States District Court for the Southern District of Mississippi also addressed this issue in *Battle v. Pre-Paid Legal Services, Inc.,* 2006 U.S. Dist. LEXIS 15690 (S.D. Miss. Feb. 9, 2006) ("The Fifth Circuit has consistently held that with respect to Chapter 7 proceedings, where 'the claims are property of the bankruptcy estate, the Trustee is the real party in interest with exclusive standing to assert them.'") The court found that,

28

as Beverly Thompson, the plaintiff and Chapter 7 debtor, lacked standing to pursue the claims, the case could be dismissed, but the court went on to cite 11 U.S.C. §554 of the bankruptcy code and ordered the trustee to respond, saying: "However, in the court's opinion, the better course is to provide the bankruptcy trustee an opportunity to respond and advise the court what action, if any, he desires to take with respect to the case." *Id.* at 2.

¶67. The Fifth Circuit Court of Appeals has also found that the defense of real party in interest must be timely asserted. Specifically, that court found:

> . . . It is thus contemplated that if a defendant objects to being sued by a party who does not have the right to pursue the claim in issue, the real party in interest will be able to step forward and assume the plaintiff's role. . . . The earlier the defense is raised, the more likely that the high cost of trial preparation for both parties can be avoided if a real party in interest question is determined adversely to a plaintiff.
>
> Surely it is inconsistent with the rule to raise a real party in interest defense for the first time on motion for directed verdict. A number of cases have held that the defense is waived when tardily asserted. *See, e.g., Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982) (assertion 16 days before trial is untimely). . . .

*Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 102 (5th Cir. 1989). *See also Rogers v. Samedan Oil Corp.,* 308 F.3d 477, 483-84 (5th Cir. 2002) (failure to raise the assertion that plaintiff was not the real party in interest until day before trial constituted waiver); and *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563 (8th Cir. 1996) (assertion at pretrial conference constituted waiver).

¶68. As discussed more fully herein, in the instant case, the earliest Pope even alluded to a possible real-party-in-interest defense was after jury selection and just prior to the start of the trial. Based on *Gogolin*, Pope waived a real-party-in-interest defense. Notwithstanding

the waiver, the trial court erred in vacating the judgment and dismissing the case for other reasons as well.

¶69. The trial court found in its memorandum opinion on October 17, 2005, as follows: "At no time, however, has any motion been filed with this court asking that Henderson, as trustee, be substituted as the real party in interest or permitting him, as such, to intervene in this action." However, as set out in the aforementioned case law, Rule 17(a) plainly allows for "ratification, joinder *or* substitution" and the trustee acknowledged his ratification some two and a half years prior to dismissal. (Emphasis added). In his Motion to Employ Special Counsel and Approve Contingency Fee Agreement, which was approved by order on January 23, 2003, the trustee asserted:

> The [bankruptcy] case was reopened because the Trustee discovered a possible asset that is property of the estate and had not been administered. The Debtor, George Michael Kirk had a claim against Dixieland Forest Products and others. In order for the Trustee to effectively pursue the claim against Dixieland Forest Products and others, it is necessary of the Debtor to retain special counsel to pursue the claim on behalf of the bankruptcy estate.

This language clearly indicates the real party in interest's ratification of the action.

¶70. Rule 17(a) provides, in relevant part: "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. . . ." Pope first alluded to a possible real-party-in-interest argument only after jury selection and just prior to the start of the trial on October 14, 2002, during a hearing on a motion in limine by Kirk. However, Pope raised Kirk's failure to list the lawsuit in an objection to Kirk's motion in limine as discussed previously

30

herein, rather than as a specific objection dealing with real party in interest.[15] Nevertheless, the bankruptcy case was reopened on October 25, 2002, and the trustee acknowledged his ratification in his motion for special counsel on December 23, 2002.

¶71. The trustee clearly acknowledged his ratification long before any actual objection and within a reasonable time of the mention of the bankruptcy at trial. Additionally, just five days after the trial court entered the Final Judgment of Dismissal, the trustee filed a Notice of Substitution of Real Party in Interest and Ratification and a Motion to Alter and Amend Judgment, reiterating his prior ratification of the lawsuit. Specifically, the trustee asserted:

> Therefore, pursuant to the procedures of the United States Bankruptcy Court, the Trustee did ratify the furtherance of the lawsuit and the collection of the judgment by obtaining the court order of the Bankruptcy Court assuming the contingency fee agreement for the prosecution of the causes of action against Randy Pope and Dixieland Forest Products, Inc. Further, David W. Baria was approved as the Trustee's special legal counsel. There is no requirement that ratification by the Bankruptcy Court Orders be filed in the state court proceeding.

¶72. The trustee's assertion that it is not necessary for a Chapter 7 trustee to intervene or be substituted as a real party in interest in a pending state court action, as the trustee's ratification of the lawsuit is sufficient, is supported by ***Jenkins v. Wright & Ferguson Funeral Home***, 215 F.R.D. 518 (S.D. Miss. 2003), and ***Wieburg***, 272 F.3d at 307. In ***Jenkins***, the district court found:

> This provision of Rule 17(a) "provides that formal joinder or substitution of the real party in interest will not be necessary when [the real party in interest] ratifies commencement of the action." *Big John, B.V. v. Indian Head Grain,*

---

[15]Then, in his September 14, 2005, Rule 60(b) motion for relief from judgment, Pope asserted that Kirk was judicially estopped from pursuing the lawsuit for failure to initially disclose it to the bankruptcy court.

31

*Co.,* 718 F.2d 143, 147 *522 (5th Cir. 1983) (citations omitted). "Proper ratification requires [the] ratifying party to authorize continuation of [the] action and agree to be bound by the result." *Wieburg*, 272 F.3d at 307 (citing *Naghiu v. Inter-Continental Hotels Group, Inc.*, 165 F.R.D. 413, 421 (D.Del. 1996)."

*Jenkins*, 215 F.R.D. at 521. The district court further held:

> However, this Court must also consider the impact of dismissal of this case on Jenkins' creditors. [Citation omitted]. Under the wording of the subject Ratification Agreement, it is apparent to the Court that even though the case will be prosecuted in Jenkins' name, her bankruptcy estate will be the first beneficiary from the proceeds of the case, if any. For this additional reason, the Court finds that the Ratification Agreement should be enforced, and that Jenkins should be allowed to prosecute this case in her name.

*Id.* at 522.

¶73. Therefore, I would find that it was an abuse of discretion for the trial court to vacate the judgment.

*Judicial Estoppel*

¶74. Pope argues that judicial estoppel is not an issue before this Court because the trial court did not vacate the judgment on the basis of judicial estoppel. Although the trial court held the judgment void on the basis of standing, the trial court did make a finding of judicial estoppel, which it identified as the threshold question. However, as I would find that the motion raising judicial estoppel was untimely and that this matter should be reversed and rendered, and as Pope concedes the trial court made no finding of judicial estoppel, this issue is moot. Notwithstanding that the issue is moot, I would find that judicial estoppel is not applicable to Kirk. Furthermore, I would avoid any attempt to interfere with matters properly

within the jurisdiction of the United States Bankruptcy Court.[16]  In the Order of Remand, the U.S. District Court stated that the fact that plaintiff's counsel was appointed as the trustee's representative to pursue this matter "quiets the court's apprehensions whether the debtor would be in any position to squander the proceeds of any received judgment instead of reporting same to the bankruptcy court for the benefit of creditors."  I agree.

¶75.  Judicial estoppel is a common-law doctrine by which a party is estopped from assuming a position contrary to a position previously assumed.  ***Browning Mfg.***, 179 F.3d at 205.  "The purpose of the doctrine is 'to protect the integrity of the judicial process,' by 'preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.'"  ***Id.*** (quoting ***Brandon v. Interfirst Corp.***, 858 F.2d 266, 268 (5th Cir. 1988).  "The doctrine is generally applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'"  ***Browning Mfg.***, 179 F.3d at 206 (quoting ***Scarano v. Central R. Co.***, 203 F.2d 510, 513 (3d Cir. 1953)).  There are typically three limitations on the doctrine of judicial estoppel: 1) it may be applied only where the party's position is clearly inconsistent with its previous one; 2) the party must have convinced the court to accept its previous position; and 3) the party must have acted intentionally.  ***Id.***

¶76.  In ***Browning***, the court found judicial estoppel based on the repeated failure to disclose some millions of dollars of claims.  There is no assertion in the case sub judice that Kirk repeatedly failed to disclose the lawsuit against Pope.  The record indicates that Kirk

---

[16]***In re Dewberry***, 266 B.R. 916, 920 (Bankr. S.D. Ga. 2001), as cited by the majority, is distinguishable because it did not address the issue of an action in state court.

33

disclosed the lawsuit to his bankruptcy lawyer, and that Pope and the trial court were fully aware of the bankruptcy at all times herein relevant. As stated previously herein, Kirk's bankruptcy attorney indicates that Kirk contacted him inquiring as to whether anything needed to be done with regard to the bankruptcy and then proceeded to attempt to correct the situation. There is no evidence of any intentional attempt by Kirk to "play fast and loose with the courts."

¶77. This Court has said that, to find judicial estoppel, the representation "must be willfully false, or must have the effect of misleading the other party to his injury. . . ." *Mississippi Power & Light Co. v. Cook*, 832 So. 2d 474, 482 (Miss. 2002). In *Mississippi Power & Light* (*MP&L*), Kenneth Cook failed to disclose the existence of a lawsuit filed some two years earlier in a petition for Chapter 7 bankruptcy. Cook said he did not disclose the lawsuit because he believed it would not amount to anything and because his attorney advised him that it was not necessary to disclose it. When MP&L tried to have the bankruptcy reopened, Cook amended his schedule to reflect the claim. MP&L raised an issue on appeal regarding the trial court's handling of the bankruptcy file. This Court held:

> Cook explained his actions in the bankruptcy proceeding, and it was correctly left to the jury to determine his credibility. Cook did not make a willfully false statement that led MP&L to injury. On the advice of counsel, Cook did not disclose the present lawsuit because he thought it was dead. Additionally, MP&L was not a debtor to whom Cook owed money in the bankruptcy proceeding. This issue is without merit.

*Id.* at 482.

¶78. In the instant case, Kirk explained his actions. However, the Rule 60(b) motion was not filed until almost two years after the final judgment, so there was no opportunity for a

34

jury to determine his credibility. Kirk did not make a willfully false statement that led to Pope's injury. Kirk fully disclosed the lawsuit to counsel, but counsel determined it was not worth listing in the schedule. Pope was not a debtor to whom Kirk owed money in the bankruptcy proceeding. Based on *MP&L*, this issue is without merit.

¶79. The trial court and the majority rely on *Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330 (5th Cir. 2004), in the analysis of this issue. However, *Superior Crewboats* was decided several years after this case began and can be distinguished. In *Superior Crewboats*, Arthur Hudspeath filed a personal-injury lawsuit and then a year later filed a petition for Chapter 13 bankruptcy, which was subsequently converted to a Chapter 7. Hudspeath disclosed the lawsuit at the creditors' meeting, but made inaccurate representations that the claim was barred by the statute of limitations. As a result of Hudspeath's misrepresentation, the trustee filed a petition of disclaimer and abandonment with regard to the lawsuit. Superior later informed the trustee that Hudspeath was still pursuing the lawsuit and moved to dismiss on the basis that the claim was barred by judicial estoppel. The district court rejected the judicial-estoppel argument, and the Fifth Circuit Court of Appeals reversed. There is absolutely no suggestion in the instant case that Kirk made any misrepresentation to the trustee or the bankruptcy court regarding the lawsuit in an attempt to garner abandonment.

¶80. The trial court and the majority also cite *Parker v. Wendy's International*, 365 F.3d 1268 (11th Cir. 2004). However, *Parker* supports Kirk's position. In *Parker*, Parker filed a complaint against Wendy's. Some two years later, Parker filed a petition for Chapter 7 bankruptcy. Just before trial against Wendy's, Parker moved for a continuance, indicating

that she had failed to disclose the lawsuit to the bankruptcy trustee. At some point thereafter, the trustee moved to intervene or to be substituted as the real party in interest. The court found that the doctrine of judicial estoppel was improperly invoked, and held: "The claim against Wendy's belongs to the bankruptcy estate and its representative, the trustee. The trustee made no false or inconsistent statement under oath in a prior proceeding and is not tainted or burdened by the debtor's misconduct." *Id.* at 1273.

¶81. The trial court in the instant case, relying on *Parker*, found that the trustee never moved to intervene or to be substituted. However, as discussed previously herein, the trustee did acknowledge his ratification of the lawsuit in his motion on December 23, 2002, which was sufficient pursuant to Rule 17(a), long before the final judgment, which according to the trial court in his calculations for the Rule 60(b) motion, was entered May 24, 2005. Therefore, pursuant to *Parker*, the trustee, as the real party in interest, clearly has made no inconsistent statement in a prior proceeding.

¶82. Further, the only evidence of a party playing "fast and loose with the courts" is the conduct exhibited by Pope, who relied on the very judgment in question herein to pursue a malpractice action against his prior attorney. While owing a judgment in this matter and long before making any claim that Kirk was judicially estopped from pursuing this matter, Pope procured a $275,000 settlement in the legal malpractice case as a result of this judgment, sold assets and paid substantial sums in legal fees to his new attorneys. Pope now asks this Court to affirm relief from this judgment, which is now part of the bankruptcy estate. Such a move would further compound Pope's inappropriate behavior and would harm only Kirk's creditors. I would decline to take such a route.

*Remittitur*

¶83. The majority relies on plain error in addressing the issue of remittitur, which was not raised on appeal. However, while there are many cases in which this Court should apply plain error, this is not a case in which plain error should apply. The majority is correct that the trial court entered an order on August 21, 2003, granting a new trial on damages. However, this order was, in part, granting "the plaintiff's request for a new trial on the issue of damages. . . ." The plaintiff, Kirk, then filed a motion for reconsideration, asserting that any new trial language in his previous motion was inadvertent and that he did not want a new trial on the issue of damages. The trial court granted Kirk's motion for reconsideration, contingent on Kirk accepting the remittitur. Kirk accepted the remittitur, and the final judgment of $400,000 was entered on November 19, 2003. As acknowledged by the majority, under the then-existing law, Pope had the procedural remedy of appealing to this Court, "arguing that the trial court abused its discretion and that the remittitur was legally inadequate." Pope failed to appeal to this Court. Moreover, while Pope did subsequently file a Motion for Reconsideration and Stay of Judgment, such motion was solely on the basis of ineffective assistance of counsel. Further, shortly thereafter, Pope **abandoned** his effort to have the court reconsider its judgment, thereby indicating his agreement to accept the remittitur.

## CONCLUSION

¶84. For the reasons stated herein, I would reverse trial court's judgment of dismissal and reinstate the prior judgment in this matter.

**DIAZ, P.J., JOINS THIS OPINION.**

37