# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00724-COA

SHIRLEY ADAMS, INDIVIDUALLY AND AS                      **APPELLANT**
SURVIVOR AND ONLY HEIR OF DOROTHY
TURNER, DECEASED

v.

GRACELAND CARE CENTER OF OXFORD,                    **APPELLEES**
LLC, GRACELAND MANAGEMENT
COMPANY, INC., LAFAYETTE LTC, INC., AND
YALOBUSHA GENERAL HOSPITAL AND
NURSING HOME

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2013 |
| TRIAL JUDGE: | HON. JOHN ANDREW GREGORY |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BOBBY FLOYD MARTIN JR. |
| | RALPH STEWART GUERNSEY |
| | JENNIFER LYN MILLER BERMEL |
| ATTORNEYS FOR APPELLEES: | THOMAS L. KIRKLAND JR. |
| | JOHN G. WHEELER |
| | ANDY LOWRY |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEES |
| DISPOSITION: | REVERSED AND REMANDED – 11/03/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

      **BEFORE GRIFFIS, P.J., FAIR AND JAMES, JJ.**

      **JAMES, J., FOR THE COURT:**

¶1.     Shirley Adams filed a complaint as the sole heir of her deceased mother, Dorothy

Turner, against Graceland Care Center of Oxford LLC (Graceland Care Center), Graceland

Management Company Inc. (Graceland Management), Yalobusha General Hospital and

Nursing Home (Yalobusha), and Lafayette LTC Inc. (Lafayette) (collectively "Defendants"). The Defendants moved for summary judgment based on judicial estoppel because Adams failed to disclose the lawsuit by amending her schedule of assets in her pending bankruptcy proceeding. The trial court granted the motion and dismissed the case with prejudice. On appeal, Adams argues that the trial court erred by granting summary judgment. We agree and remand this case to proceed to trial.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 9, 2004, Adams filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Mississippi. On February 1, 2005, Adams's five-year bankruptcy plan was confirmed, and she made regular payments in accordance with her plan. On December 7, 2007, Adams's mother, Turner, died while living in Graceland Care Center's nursing-home facility. On May 14, 2008, Adams initiated a personal-injury/wrongful-death cause of action against Graceland Care Center, Graceland Management, and Lafayette in her individual capacity and as the survivor and heir of her deceased mother. On January 12, 2009, Adams, the only child and sole wrongful-death beneficiary, filed a second amended complaint adding Yalobusha as a defendant, alleging that Turner suffered personal injuries and death as a result of substandard healthcare services provided to her while she was a resident at Yalobusha. Although Adams's bankruptcy case was still pending, she failed to amend her schedules to add the cause of action as an asset of her bankruptcy estate prior to completing her payment plan and the bankruptcy court granting

2

her a discharge on March 31, 2009.

¶3.    On August 19, 2009, the Defendants discovered through Adams's deposition testimony that she had previously filed bankruptcy, and did not list the cause of action as an asset in her bankruptcy estate.  On August 28, 2009, Yalobusha moved for summary judgment based on Adams's failure to disclose her lawsuit, and argued that judicial estoppel barred her from pursing the claim.  The remaining Defendants joined in Yalobusha's motion. On October 13, 2009, Adams moved to reopen her bankruptcy case for the purpose of adding her cause of action to the schedules.  On October 16, 2009, the bankruptcy court granted Adams's motion, and she amended her schedules listing the cause of action as an asset on October 20, 2009.[1]  The trial court, by letter dated September 13, 2010, stated that it would grant the Defendant's motion for summary judgment.  However, on October 15, 2010, Adams filed a motion for reconsideration in light of the Mississippi Supreme Court's decision in *Copiah County v. Oliver*, 51 So. 3d 205, 207 (¶12) (Miss. 2011).

¶4.    On December 19, 2011, the trial court, following the supreme court's decision in *Oliver*, entered an order staying the proceedings until the bankruptcy court made a decision on the sole question of "whether Adams had a duty to disclose her personal injury/wrongful

---

[1]  Initially, after the case was reopened, Adams attempted to list the cause of action as exempt personal property, but the trustee filed an objection.  The bankruptcy court sustained the trustee's objection because Mississippi Code Annotated section 85-3-17 (Rev. 2011) does not permit an exemption until a personal-injury cause of action has been reduced to a judgment; therefore, Adams's exemption claim was disallowed without prejudice so that Adams could reassert her exemption claim if the cause of action was ever reduced to a judgment.

death cause of action as an asset of her bankruptcy estate."  The bankruptcy court held an evidentiary hearing on Adams's and the Defendants' cross-motions for declaratory judgments on whether the affirmative defense of judicial estoppel was applicable.  Following the hearing, the bankruptcy court wished to ascertain whether the Chapter 13 trustee had an interest in pursuing the state cause of action.  The trustee was given an opportunity to review the factual issues in both the bankruptcy case and the state court proceeding before submitting a response to the bankruptcy court.  On July 30, 2012, the trustee submitted a letter to the bankruptcy court, which stated:

> After reviewing the timely filed and allowed general unsecured claims which total $4,719.53, the trustee reports that she would abandon any settlement or judgment proceeds and not administer the payment of such on behalf of the bankruptcy estate.

¶5.    On October 12, 2012, the bankruptcy court rendered its opinion finding "that Adams had a continuing duty throughout the pendency of her bankruptcy case to disclose the state law cause of action." *In re Adams*, 481 B.R. 854, 859 (Bankr. N.D. Miss. 2012).  However, the bankruptcy court left the issue of judicial estoppel for the trial court to decide. *Id.* at 861-862.

¶6.    Following the bankruptcy court's decision, the Defendants renewed their motion for summary judgment.  On April 13, 2013, the trial court granted the Defendants' motion for summary judgment finding that "based on [Adams's] own affidavit and deposition testimony, she had knowledge of the facts supporting her cause of action prior to the discharge of her [C]hapter 13 proceeding."  Adams argues that the trial court erred by granting summary

judgment.  We agree and find that there is a genuine issue of material fact as to whether Adams's failure to amend her bankruptcy schedules was an intentional self-contradiction, knowingly made, or amounted to a willfully false representation.  Accordingly, we reverse the trial court's decision granting summary judgment and remand the case to proceed to trial.

## STANDARD OF REVIEW

¶7.    A trial court's imposition of judicial estoppel is subject to review under an abuse-of-discretion standard.  *Kirk v. Pope*, 973 So. 2d 981, 986 (¶11) (Miss. 2007) (citing *Superior Crewboats Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 334 (5th Cir. 2004); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)).  However, in *Oliver*, 51 So. 3d at 207 (¶7), the supreme court applied the de novo standard in reviewing a trial court's denial of a motion for summary judgment on the basis of judicial estoppel.  Because the trial court granted the Defendant's motion for summary judgment, we will review the trial court's decision under a de novo standard.  *See id.* at 206-07 (¶¶6-8).

¶8.    In *Karpinsky v. American National Insurance Co.*, 109 So. 3d 84, 88 (¶10) (Miss. 2013), the Mississippi Supreme Court summarized the summary-judgment standard:

> Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.

(Internal citations and quotation marks omitted). "Additionally, the evidence must be viewed in the light most favorable to the party against whom the motion has been made." *One S. Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (¶6) (Miss. 2007). "The moving party has the burden of demonstrating that no genuine issue of material facts exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *Duckworth v. Warren*, 10 So. 3d 433, 437 (¶9) (Miss. 2009). "Further, summary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation." *Id.*

## DISCUSSION

¶9.     The sole issue before this Court is whether the doctrine of judicial estoppel bars Adams from pursuing her cause of action against the Defendants for failing to amend her schedule of assets in the bankruptcy court to include her cause of action prior to the completion of her plan and discharge.[2] Adams argues that summary judgment was not proper because her nondisclosure was inadvertent.

¶10.    The doctrine of judicial estoppel should be applied to prevent a party from achieving an unfair advantage by taking inconsistent positions in litigation. *Oliver*, 51 So. 3d at 207

---

[2]     The Defendants filed a motion to strike portions of the record on appeal, specifically portions of the record containing certain discovery responses. The Mississippi Supreme Court passed the motion to this Court for consideration with the merits of the appeal. It was not necessary for the Court to consider these discovery responses to reach a decision on appeal. Even if the responses were to be considered, they would have no bearing on the issue presented before the Court. Therefore, the motion is denied as moot.

6

(¶9). "In order to protect the integrity of the judiciary, judicial estoppel must be invoked in the Court in which the apparent self-serving contradiction occurred and in which the defense is first asserted." *Kirk*, 973 So. 2d at 991 (¶31).

¶11.    In *Kirk v. Pope*, the supreme court identified three elements of judicial estoppel. *Clark v. Neese*, 131 So. 3d 556, 560 (¶16) (Miss. 2013). "A party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Id.*

¶12.    "Judicial estoppel is designed to protect the judicial system and applies where *intentional* self-contradiction is being used as a means of obtaining [an] unfair advantage in a forum provided for suitors seeking justice." *Kirk*, 973 So. 2d at 991 (¶31) (emphasis added). "The purpose of judicial estoppel is to prevent parties from *knowingly* taking a position in one court that is contrary to a position that party has asserted in, and that has been accepted by, another court." *Clark*, 131 So. 3d at 562 (¶21) (emphasis added).

¶13.    In *Kirk*, this Court applied judicial estoppel against the plaintiff after he failed to disclose a breach-of-contract action to the bankruptcy court. *Kirk*, 973 So. 2d at 992 (¶38). However, we find that this case is distinguishable from *Kirk*. *Kirk* was decided under an abuse-of-discretion standard of review. *Id.* at 986 (¶11). Like *Oliver*, this appeal proceeds from a decision on a summary-judgment motion, which is reviewed de novo. *See Oliver*, 51 So. 3d at 207 (¶7).

7

¶14. The facts of *Kirk* are also distinguishable from the facts of this case, specifically the representations, or lack thereof, made regarding their respective lawsuits. In *Kirk,* the court found that Kirk's nondisclosure of the lawsuit was not inadvertent. *Kirk*, 973 So. 2d at 992 (¶38). There, the trial court determined that Kirk was "less than candid with his bankruptcy attorney regarding the status of his lawsuit." *Id.* at (¶37). Based on Kirk's misrepresentations, his bankruptcy attorney operated under the impression that his lawsuit had been dismissed, and did not list the lawsuit on Kirk's bankruptcy schedules. *Id*. at 991-92 (¶¶36-37). Moreover, Kirk did not disclose his lawsuit to the bankruptcy court until after he had obtained a final judgment. *Id*. at 992 (¶37). Specifically, the court found:

> While we cannot be certain of Kirk's motivation, we find there was sufficient evidence for the circuit court to conclude that Kirk's non-disclosure was not inadvertent and that Kirk notified the bankruptcy trustee only because the defendants forced his hand. We cannot say that the circuit court abused its discretion in finding that Kirk intended to conceal his claim from the bankruptcy court in order to reap a windfall by preventing his creditors from recovering any proceeds of a potential judgment. *See* [*Superior Crewboats*, 374 F.3d] at 336. Therefore, we find that the circuit court did not err in finding that judicial estoppel applied to Kirk.

*Kirk,* 973 So. 2d at 992 (¶38).

¶15. The *Kirk* court remanded the case to the trial court and found that the bankruptcy trustee should not be judicially estopped from pursuing the claim, but invoked judicial estoppel against Kirk individually to prevent him from recovering any proceeds of the judgment. *Id.* at (¶40). The court reached this conclusion because, "should the trustee recover more than the amount to satisfy all creditors, judicial estoppel could be invoked by

8

the defendant to limit recovery to only that amount and prevent an undeserved windfall from devolving on the non-disclosing debtor." *Id.* at (¶39).

¶16.    Adams's behavior cannot be equated to the affirmative misrepresentations made by the plaintiff in *Kirk*.  Here, there is no evidence that Adams made any affirmative misrepresentation with the intent to mislead the bankruptcy court.  Like Kirk, Adams did not disclose her claim until it was brought out by the defendants, but Adams did not wait until she obtained a judgment to reopen her bankruptcy case and disclose her cause of action.  When she learned of her continuing duty to disclose her cause of action, Adams immediately moved to reopen her bankruptcy case and amend her schedule of assets, although she was nearing the completion of her five-year payment plan.

¶17.    Adams's actions should not be imputed as willful, because it involved a ruling to be made by the court as to whether she had a continuing duty to disclose in her Chapter 13 bankruptcy proceedings.  Also, this cause of action accrued when Adams's mother died on December 7, 2007.  Adams stated that she was not aware that she had to disclose the cause of action in her bankruptcy case, which had been filed on August 9, 2004.  Adams's bankruptcy attorney, who assisted in reopening Adams's bankruptcy case, submitted an affidavit on her behalf stating that he "was convinced[,] and remains so, that Ms. Adams was an 'unsophisticated consumer' who failed to list her lawsuit as a result of inadvertence only." Her plan had been confirmed on February 1, 2005, and her mother died nearly three years later.  She cannot be said to have had the same conscious awareness of her mother's cause

of action that vested with her at her mother's death that she would have if it were her own personal cause of action.

¶18.   "A debtor's non-disclosure is inadvertent only when, *in general*, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Kirk*, 973 So. 2d at 991 (¶35) (emphasis added) (citing *Superior Crewboats*., 374 F.3d at 335) (quoting *In re Coastal Plains Inc*., 179 F.3d 197, 210 (5th Cir. 1999)).   The Fifth Circuit Court of Appeals decision in *Coastal Plains*, 179 F.3d at 210, is instructive on this issue.  In adopting this general inadvertence rule, the court cited *Dawson v. J.G. Wentworth & Co.*, 946 F. Supp. 394 (E.D. Pa. 1996), which held that although a debtor disclosed his claim in the amended bankruptcy schedules, a fact issue regarding the debtor's good or bad faith in not disclosing the claim in the original bankruptcy schedules precluded summary judgment based on judicial estoppel. *Coastal Plains*, 179 F.3d at 210 n.9.  In *Dawson*, the court refused to infer bad faith merely from the fact of nondisclosure because the record in that case created enough of a question regarding the debtor's intent so as to preclude the application of the extreme remedy of judicial estoppel. *Dawson*, 946 F. Supp. at 398.  Therefore, the Fifth Circuit has recognized that a fact issue regarding a debtor's good or bad faith in not disclosing a claim may preclude summary judgment. *See also McKinney v. BancorpSouth Bank*, No. 1:12-cv-00186-MPM-DAS, 2013 WL 3834878, at *1 (N.D. Miss. July 24, 2013) ("Judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.").

10

¶19.    In *Kirk*, the court stated that "the representation must be *willfully false*, or must have the effect of misleading the other party to his injury." *Kirk*, 973 So. 2d at 991 (¶35) (emphasis added) (quoting *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 482 (¶22) (Miss. 2002)). In *Cook*, the debtor had knowledge of his pending lawsuit, but he did not disclose the lawsuit in bankruptcy court because he thought it would not amount to anything, and his attorney advised him that it was not necessary to disclose it to the bankruptcy court. *Cook,* 832 So. 2d at 481-82 (¶¶20-22). The Mississippi Supreme Court held that the debtor was not barred by the doctrine of judicial estoppel because "[the debtor] did not make a willfully false statement[.]" *Id*. at 482 (¶22). The court noted:

> [T]he jury heard what [the debtor] said was his reason for not disclosing this information to the bankruptcy court, and the jury was allowed to take this into consideration in determining the credibility of [the debtor]. It is for the jury, not a reviewing court, to determine the credibility of a witness.

*Id.* at 481-82 (¶21).

¶20.    Under the summary-judgment standard, the Defendants have the burden of demonstrating that no genuine issue of material facts exists, and the nonmoving party must be given the benefit of the doubt concerning the existence of a material fact. *Duckworth*, 10 So. 3d at 437 (¶9)**.** We find that the Defendants failed to meet their burden.

¶21.    There is no dispute that Adams had a continuing duty to disclose her cause of action. Giving Adams the benefit of the doubt concerning the existence of a disputed material fact, we find that the evidence and testimony before us does not demonstrate that Adams's failure to disclose, standing alone, amounted to a willfully false representation. Although the

11

Mississippi Supreme Court eliminated the adverse-party requirement for judicial estoppel, it did not disturb the requirement of a willfully false representation. *See Clark*, 131 So. 3d at 561-62 (¶21). In viewing the facts in the light most favorable to Adams, we find that no motive for concealment has been shown. The efforts by Adams to amend her schedules to list the cause of action are inconsistent with any motive for concealment. We cannot say that the evidence, when viewed in the light most favorably to Adams, shows that Adams intended to conceal her claim from the bankruptcy court in order to reap a windfall by preventing her creditors from recovering any proceeds from a potential judgment.

¶22.    Moreover, the evidence in this case does not prove that Adams made an intentional self-contradiction as a means of obtaining an unfair advantage in a forum provided for suitors seeking justice. *See Kirk*, 973 So. 2d at 991 (¶31); *see also Clark*, 131 So. 3d at 562 (¶23) (recognizing that lack of inadvertence requires that the positions taken must be knowingly inconsistent). Likewise, we cannot say that the evidence shows that Adams knowingly took inconsistent positions in the trial court and bankruptcy court. *See Clark*, 131 So. 3d at 561 n.22 (citing *Cook*, 832 So. 2d at 482 (¶22) (holding judicial estoppel did not apply because the inconsistency was not knowing)).

¶23.    The dissent would hold that the three elements of judicial estoppel were satisfied through a rigid application of the elements without regard to the specific factual context of this case. "However, judicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may

12

inform the doctrine's application in specific factual contexts." *Love v. Tyson Foods Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). Accordingly, based on the record before us, we hold that the trial court erred in applying the doctrine of judicial estoppel. We reverse the trial court's grant of summary judgment in favor of the Defendants and remand this case to the trial court to proceed to trial.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**LEE, C.J., GRIFFIS, P.J., AND FAIR, J., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE AND CARLTON, JJ. BARNES AND MAXWELL, JJ., NOT PARTICIPATING.**

**WILSON, J., DISSENTING:**

¶25. I dissent because the plurality opinion applies the wrong standard of review, reaches the wrong result under applicable precedent, and mistakenly implies that the issue of judicial estoppel should be resolved by a jury at trial.

¶26. First, the plurality applies the wrong standard of review. Our Supreme Court has clearly stated that "a trial court's imposition of judicial estoppel . . . is subject to review under an abuse of discretion standard." *Kirk v. Pope*, 973 So. 2d 981, 986 (¶12) (Miss. 2007). The Court repeated this point in its initial (subsequently withdrawn) opinion in *Copiah County v. Oliver*, No. 2009-IA-00809-SCT, at (¶6) (Miss. Sept. 30, 2010) ("This Court reviews a trial court's grant or denial of a motion for summary judgment or a motion

13

to dismiss under a de novo standard. A trial court's decision regarding judicial estoppel is subject to review under an abuse-of-discretion standard."[3] (citations omitted)), *withdrawn on mot. for reh'g*, 51 So. 3d 205 (Miss. 2011). The Court's opinion on rehearing in *Oliver* omitted reference to the abuse-of-discretion standard, but I suggest that it did so because the opinion only "direct[ed] the trial court to stay the proceedings until the bankruptcy court . . . had an opportunity to consider" a logically antecedent issue of federal bankruptcy law. *Oliver*, 51 So. 3d at 207 (¶12). Thus, the final opinion in *Oliver*—on which the plurality relies for its standard of review—did not review the merits of the trial court's application of the doctrine of judicial estoppel. We should continue to apply the standard of review that the Supreme Court expressly adopted in *Kirk* until *Kirk* is overruled.

¶27. Applying the proper standard of review,[4] the circuit court's decision must be affirmed. The circuit judge applied precedent that is directly on point (*Kirk* and *Oliver*) and did not abuse his discretion by dismissing Adams's claims with prejudice based on her failure to

---

[3] This is similar to cases decided on summary judgment in which we review the trial court's underlying rulings as to the admissibility of expert testimony for abuse of discretion but review the grant or denial of summary judgment de novo. *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 178-79 (¶8) (Miss. 2009). The underlying evidentiary ruling may be dispositive, but that does not change the applicable standard of review. *See id.* The same is true here—the trial court's underlying ruling on the issue of judicial estoppel may be dispositive, but we still apply the abuse-of-discretion standard.

[4] *See, e.g.*, *Detroit Marine Eng'g v. McRee*, 510 So. 2d 462, 467 (Miss. 1987) ("Our inquiry is limited to whether the trial judge abused his discretion; we may not rule on whether he was 'right' or 'wrong' in our view. And, unless the trial court based its decision on an erroneous review of law, this Court is not authorized to reverse for an abuse of discretion unless we find it was arbitrary and clearly erroneous." (quotation marks and citations omitted)).

14

disclose her claims in her prior federal bankruptcy.

¶28. "[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of *all* of their assets." *In re Coastal Plains Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (emphasis omitted) (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). The debtor's duty to disclose all of her assets, including contingent claims, is a "*continuing duty throughout the pendency of her bankruptcy case*." *In re Adams*, 481 B.R. 854, 859 (Bankr. N.D. Miss. 2012) (emphasis added) (citing *Coastal Plains*, 179 F.3d at 207-08; *Jethroe v. Omnova Solutions Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)). The debtor's "omission of [a] personal injury claim from [her] mandatory bankruptcy filings is tantamount to a representation"—a misrepresentation—"that no such claim existed." *In re Superior Crewboats Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). Such omissions impair "[t]he interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the [debtor's] disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis." *Coastal Plains*, 179 F.3d at 208 (emphasis omitted) (quoting *Rosenshein*, 918 F. Supp. at 104). To protect these interests, courts apply the doctrine of judicial estoppel and "will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *Id.*

¶29. When a debtor seeks to recover on a claim that she failed to disclose in a prior bankruptcy filing, there are only "three requirements for judicial estoppel: '(1) the party is

judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent.'" *Oliver*, 51 So. 3d at 207 (¶9) (quoting *Kirk*, 973 So. 2d at 991 (¶32) (quoting *Superior Crewboats*, 374 F.3d at 335)).[5] Here, because Adams had a continuing duty to disclose her claim to the bankruptcy court, her failure to disclose "impliedly represented that she had no such claim," which "is plainly inconsistent with her . . . assertion of the claim in state court." *In re Flugence*, 738 F.3d 126, 130 (5th Cir. 2013). In addition, when the bankruptcy court entered an order discharging Adams from bankruptcy, it effectively accepted her representation that she had made a full and complete disclosure of her assets. *See Superior Crewboats*, 374 F.3d at 330; *Tubbs v. Huntington Ingalls Inc.*, No. 1:06CV834HSO-JMR, 2011 WL 3891877, at *6 (S.D. Miss. Aug. 29, 2011). Accordingly, the first and second requirements of judicial estoppel are satisfied.

¶30. As the circuit court correctly recognized, the only real issue in this case is whether Adams's non-disclosure was "inadvertent." "A debtor's non-disclosure is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no

---

[5] *Oliver* and *Kirk* appropriately applied federal caselaw to determine the preclusive effect of a debtor's failure to disclose a claim in federal bankruptcy proceedings. *See Superior Crewboats*, 374 F.3d at 334 & n.3; *Kamont v. West*, 83 F. App'x 1, 3 (5th Cir. 2003) ("We apply federal law where judicial estoppel is applied based on a debtor's failure to disclose assets in violation of the federal Bankruptcy Code."); *Bailey v. Barnhart Interest Inc.*, 287 S.W.3d 906, 910 (Tex. Ct. App. 2009) ("Because the [defendants] invoked judicial estoppel in the bankruptcy context, we apply federal law to determine whether the doctrine applies here."); 19 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4514 (2d ed.) ("[F]ederal common law is truly federal law in the sense that, by virtue of the Supremacy Clause, it is binding on state courts" (footnotes omitted)).

motive for their concealment." *Kirk*, 973 So. 2d at 991 (¶35) (quoting *Superior Crewboats*, 374 F.3d at 335 (quoting *Coastal Plains*, 179 F.3d at 210)). Here, the evidence was clear that Adams had ample "knowledge" of her claim because Adams testified that she decided to talk to a lawyer about suing the defendants in 2004 or 2005, she actually hired a lawyer in March 2006, and she filed her initial complaint in May 2008—all well before she was discharged from bankruptcy by order dated March 31, 2009. *See Adams*, 481 B.R. at 857.

¶31.    Because Adams had "knowledge" of her potential claim, the issue narrows further to whether she had a "motive for . . . concealment" of the claim. *Kirk*, 973 So. 2d at 991 (¶35). The Fifth Circuit rightly has observed that "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. *Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure*." *Love v. Tyson Foods Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (emphasis added) (quoting *Thompson v. Sanderson Farms Inc.*, No. 3:04CV837-WHB-JCS, 2006 WL 7089989, at *4 (S.D. Miss. May 31, 2006) (Barbour, J.)). The debtor's motive not to disclose is the same as her motive not to disclose any other asset. If the debtor does not disclose her claim, she may keep the net proceeds of any settlement or judgment for herself rather than pay her debts to creditors who are not repaid in full under the terms of her bankruptcy plan. This gives the debtor "an incentive to conceal her claims from creditors." *Jethroe v. Omnova Solutions Inc.*, 412 F.3d 598, 601 (5th Cir. 2005) (citing *Coastal Plains*, 179 F.3d at 210).

¶32.    In this case, the unsecured debts that Adams was not obligated to repay under her

17

bankruptcy plan are sufficient support for the circuit court's finding that her non-disclosure was "not inadvertent." Adams's self-evident motive not to disclose her claim satisfies the third and final requirement of judicial estoppel because the relevant question under *Kirk* is whether "the debtor . . . has *no* motive for . . . concealment.'" *Kirk*, 973 So. 2d at 991 (¶35) (emphasis added) (quoting *Superior Crewboats*, 374 F.3d at 335 (quoting *Coastal Plains*, 179 F.3d at 210)); *see Jethroe*, 412 F.3d at 601 (debtor had a "motive for concealment" because her bankruptcy confirmation plan did not require her to repay an unsecured debt of $8,373). Accordingly, the circuit court's finding that all three requirements of judicial estoppel are met was not an abuse of discretion, and its ruling should be affirmed.[6]

¶33. The plurality argues that judicial estoppel should not apply despite Adams's evident motive not to disclose her debts, but the facts that the plurality highlights are not persuasive. For instance, the plurality gives Adams credit for moving to reopen her bankruptcy case before she "obtained a judgment" in state court. *Ante* at (¶16). However, Adams moved to reopen only because the defendants first discovered the bankruptcy and moved for summary judgment on that basis. "Allowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught

---

[6] In *Kirk*, we concluded, "*While we cannot be certain of Kirk's motivation*, we find there was sufficient evidence for the circuit court to conclude that Kirk's non-disclosure was not inadvertent and that Kirk notified the bankruptcy trustee only because the defendants forced his hand." *Kirk*, 51 So. 3d at 992 (¶38) (emphasis added). The same must be said here.

concealing them." *Love*, 677 F.3d at 265-66 (quotation marks and brackets omitted) (quoting *Superior Crewboats*, 374 F.3d at 336 (quoting *Burnes v. Pemco Aeroplex Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). This is not the sort of full and complete disclosure that the bankruptcy system requires, and we should not "invite such abuses." *Id.*[7]

¶34. The plurality also finds it significant that Adams seeks to recover for her mother's injuries and death rather than for "her own personal cause of action." *Ante* at (¶17). This distinction might be relevant if Adams could argue that she "lack[ed] knowledge" of the claims because they were not her own personal claims. *Kirk*, 973 So. 2d at 991 (¶35). But as discussed above, that simply is not the case. Adams began contemplating the undisclosed claims years before she was discharged from bankruptcy, and actually filed the lawsuit more than ten months prior to the order granting her discharge. Because Adams's own testimony and actions clearly establish her knowledge of her claims, this distinction is irrelevant.

¶35. My final disagreement with the plurality opinion is that it seems to view the question as simply whether there is a "genuine issue of material fact" precluding summary judgment;

---

[7] Likewise, the trustee's decision to abandon the claim when it was first disclosed "well after the bankruptcy discharge is irrelevant to whether the judicial estoppel doctrine should apply." *Kaufman v. Robinson Prop. Grp. L.P.*, No. 2:07CV048-P-A, 2009 WL 3003261, at *2 (N.D. Miss. Sept. 16, 2009) (Pepper, J.); *accord Superior Crewboats*, 374 F.3d at 335 (applying the doctrine despite the trustee's abandonment of the claim); *Robey v. Cleveland Sch. Dist.*, No. 2:12CV101–SA–SAA, 2013 WL 5775306, at *3 (N.D. Miss. Oct. 25, 2013) (Aycock, J.) (same; collecting cases). The relevant question is whether Adams had a motive to conceal the claim when she failed to disclose it, not whether the trustee has an interest in pursuing it when it is brought to her attention post-discharge. As the bankruptcy court put it, "[t]he trustee's lack of knowledge [at the appropriate time] of Adams's state court cause of action does not provide Adams a 'safe harbor.'" *Adams*, 481 B.R. at 858.

having decided that such a factual dispute exists, the plurality implies that the issue of judicial estoppel should be decided at trial by a jury. However, whether the doctrine of judicial estoppel applies is a decision for the court, not the jury. "Judicial estoppel is designed to protect the integrity of the judicial system . . . ." *Oliver*, 51 So. 3d at 207 (¶9) (quoting *Kirk*, 973 So. 2d at 991 (¶31)). Our Supreme Court has also explained that "[j]udicial estoppel is a doctrine of law *applied by a trial court*." *Lone Star Indus. Inc. v. McGraw*, 90 So. 3d 564, 569-70 (¶18) (Miss. 2012) (emphasis added) (quoting *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 482 (¶22) (Miss. 2002)); *see also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." (quotation marks omitted)); *Thore v. Howe*, 466 F.3d 173, 178 (1st Cir. 2006) ("[W]hether to apply the judicial estoppel doctrine is . . . an issue for the court, not the jury, to decide."). The nature and purpose of the doctrine are such that the issue should be resolved by a court; whether the "integrity of the judicial system" is in need of protection is not an issue that a jury is well-suited to determine. Therefore, any suggestion that we can simply find "a genuine issue of material fact" and remand the case for a jury trial is a mistake; this Court must decide whether the circuit judge committed an abuse of discretion in his application of the doctrine to the facts of this case.[8]

---

[8] In *Mississippi Power & Light Co. v. Cook*, there was a brief discussion of the doctrine of judicial estoppel followed the statement that the plaintiff "explained his actions in the bankruptcy proceeding, and it was correctly left to the jury to determine his credibility." *Cook*, 832 So. 2d at 482 (¶22). The opinion's brief analysis of this issue is confusing, but it appears that the issue on appeal was an evidentiary one—namely, the circuit court's ruling that certain of the plaintiff's "bankruptcy documents could be used for

¶36.    In summary, I dissent because the plurality opinion applies the wrong standard of review, reaches the wrong result, and apparently remands the case for a jury trial on an issue that must be decided by the court.

**ISHEE AND CARLTON, JJ., JOIN THIS OPINION.**

---

impeachment, but the entire bankruptcy file could not be admitted into evidence because it might confuse the jury." *Id.* at 481 (¶21). The Supreme Court framed the issue raised by the appellant as "[w]hether the circuit 'mishandled' Cook's bankruptcy 'manifold.'" *Id.* at 481 (capitalization altered). I do not read the opinion to indicate that the issue of judicial estoppel was or should have been submitted to the jury—only that some of the plaintiff's bankruptcy filings were properly admitted for impeachment purposes.