# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00774-COA

**WALTER SMITH**                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

DATE OF JUDGMENT:               03/14/2019
TRIAL JUDGE:                    HON. JANNIE M. LEWIS-BLACKMON
COURT FROM WHICH APPEALED:      HUMPHREYS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: GEORGE T. HOLMES
ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                BY: ALEXANDRA RODU ROSENBLATT
                                    ASHLEY L. SULSER
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 08/22/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.    A man was found guilty of aggravated assault and possession of a firearm by a felon

after hitting another man in the head and then shooting him.  He raises four issues on appeal.

Finding no error, we affirm.

## FACTS

¶2.    The facts in this case are uncontested.  Walter Smith and Humphrey Ryland were at

the home of Roosevelt Brown.  While there, Smith approached Ryland.  He claimed Ryland

"owed him some money" for drugs.  When Ryland responded he would "pay him the rest of

it the next month," Smith "got angry."  He then hit Ryland "in the head" with a pistol.

Ryland did not have a gun. Nonetheless, he got up and "hit [Smith] two or three times" in the jaw. In turn, Smith shot Ryland "under the collarbone" and ran out of the backdoor of the house.

¶3. An ambulance was called. A first responder treated Ryland's wounds, and he was taken to the hospital. Police then arrived and began searching for Smith. He was eventually found at his father's home.

¶4. Smith was arrested and charged with aggravated assault and possession of a firearm by a felon.

**PROCEDURAL HISTORY**

¶5. At trial, the jury first heard from Chief Demtrius Allen. He testified he got a call that someone was shot. He stated when he and other officers arrived, the homeowner told him Ryland was in the house and had been shot. The officer testified the homeowner told him that Smith "took off running" toward the side of the house.

¶6. Chief Allen said he "saw the footprints on the side of the house" and "traced it back to [Smith's] father's house." He stated that once he and the other officers arrived, they surrounded Smith's father's home. He said he "knocked on the door [and] advised that the sheriff's department was out[side]," but they "didn't get a response." He told the jury he then called his supervisor because his supervisor knew Smith's father well. Chief Allen said Smith's father came to the house, and "around ten minutes later, he went in the house . . . and got Mr. Smith[.]"

2

¶7.     When asked if he had known Walter Smith beforehand, Chief Allen responded, "Yes." The chief was also asked if there was any question as to the identity of the alleged shooter. He stated the homeowner told him that after hearing the gunshot, he saw Smith run out of the house. Chief Allen also told the court that during his investigation, "[they] concluded that Mr. Smith was the aggressor," as "Mr. Smith came to where Mr. Ryland was." He further testified that Ryland did not have a weapon of any kind.

¶8.     The jury also heard from Investigator Ward Steed. He testified he was the first responder who tended to Ryland. He stated Ryland had "a gunshot wound to the upper left chest" and "a wound graze to the . . . left side of his head." He stated that after Ryland was taken to the hospital, he went to the street where Smith was found. The investigator told the court he did not see any injuries on Smith as officers took him out of his father's home. He also testified that to his knowledge, Smith did not ask for any medical assistance before he was arrested. When asked who seemed to be the aggressor, Investigator Steed replied, "Mr. Smith." He explained he came to this conclusion because he "did not see any injuries on [Smith,] and [he] did on Mr. Ryland."

¶9.     The homeowner, Roosevelt Brown, also testified. He stated he was outside when he saw Smith "coming out [his] house" on the day of the incident. He testified he heard a gunshot right before seeing Smith run out of the house. Brown was asked who was in the house when Ryland was shot. He stated, "Walter." When asked how he knew Walter Smith, he responded, "I've been knowing him all my life."

3

¶10.    Ryland then testified. He stated he did not know Smith "personally," but he "can describe him when [he] see[s] him."[1] He then told the jury Smith was a "light skinny guy, brown skinny – hair about that thick." When asked if he was sure Walter Smith shot him, he responded, "Yeah." He was also asked if he was sure Smith hit him first. He responded, "Right."

¶11.    Finally, Deputy Cole McGinnis testified. He stated he went to the hospital to talk to Ryland. He testified Ryland told him that Smith hit him first. The deputy also told the court Ryland identified Mr. Smith as the shooter. He stated that Ryland's version of events never changed.

¶12.    At the end of trial, the State offered jury instruction S-3:

> The Court instructs the Jury that flight is a circumstance from which in the absence of a reasonable explanation therefor, guilty knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt that the defendant, Walter Smith did flee or go into hiding after the shooting, then the flight of Walter Smith is to be considered in connection with all other evidence in this case. You will determine from all the facts whether the flight was from a conscious sense of guilt or whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of Walter Smith.

¶13.    Defense counsel objected stating, "I don't think that's an element of neither one of the actual charges." The State characterized the instruction as a "typical flight instruction[]." The State further argued that "the facts showed that Walter Smith after the shooting ran away by multiple people's testimony." The prosecution also argued Smith "ran away" and "hid

---

[1] Smith was present during jury selection but did not appear the following day.

4

in his house and . . . wouldn't come out." The trial court gave the flight instruction.

¶14.    Next, the State offered jury instruction S-9:

> The right to self-defense is forfeited when the defendant is the initial aggressor and provokes a difficulty, arming himself in advance, if necessary, to use his weapon and overcome his adversary.

¶15.    Counsel for Smith objected to the pre-arming instruction, arguing it was duplicative. The trial court gave the instruction over Smith's objection.

¶16.    Smith then offered a self-defense instruction. The State objected, arguing the defense "offered no testimony to say that there was an actual self-defense." The State further argued, "[A]ll the testimony basically stated that Walter Smith was the aggressor." Despite the pre-arming instruction, the trial court gave Smith's self-defense jury instruction. However, the court found there was an "insufficient factual basis" to support Smith's necessity instruction.

¶17.    The jury found Smith guilty of aggravated assault and possession of a firearm by a felon. He was sentenced to serve twenty years for aggravated assault and ten years for the possession of a firearm, consecutively. He appealed, and the case was assigned to us by the Supreme Court.

¶18.    But Smith's "[t]rial counsel did not file a notice of appeal until Monday, November 25, 2019, which was thirty-one days" after the denial of the post-trial motion, meaning it was one day late. There was also confusion over whether Smith was entitled to in forma pauperis status, and in any event, the appeal costs in his case were not paid; the Clerk of Appellate Courts administratively dismissed the appeal for that failure. Acting pro se, Smith then

5

sought and was granted a withdrawal of the mandate and for his appeal to be reinstated. The State did not oppose his motion. By an en banc order of this Court, we withdrew the mandate and reinstated Smith's appeal.

¶19. During the pendency of this appeal, in what appears to be an effort to clear up the docket, Smith's newly appointed counsel filed a "motion for authorization to proceed out of time," which asked us to suspend the Rules of Appellate Procedure because "good cause exists to allow his appeal to proceed out of time so that the ends of justice can be served."

¶20. By an en banc order dated February 8, 2023, this Court considered whether Smith's appeal was time-barred, notwithstanding that we had earlier withdrawn the mandate and reinstated the appeal. "Nothing suggests that Smith caused his untimely appeal," we determined, but "it appear[ed] that his trial counsel simply missed the ten-day deadline to file a post-trial motion that would toll the appeal deadline." Relying on well-established law, we found that "we may grant an out-of-time appeal where a person is convicted of a crime and through no fault of his own is effectively denied his right to perfect his appeal within the time prescribed by law by the acts of his attorney or the trial court." *McGruder v. State*, 886 So. 2d 1, 2 (¶4) (Miss. 2003). Furthermore, "[w]e may suspend [the Rules of Appellate Procedure] 'when justice demands' to allow an out-of-time appeal in criminal cases." *Id.* (quoting *Fair v. State*, 571 So. 2d 965, 966 (Miss. 1990)). By a vote of 8-2, the Court held that the motion would be granted, and "[p]ursuant to Rule 2(c) . . . the deadline to appeal is

6

hereby suspended so this appeal may proceed on the merits."[2]

## DISCUSSION

### I. The trial court committed harmless error by giving the pre-arming jury instruction.

¶21. Smith first argues the trial court erred by instructing the jury on pre-arming. In so doing, he argues it "unfairly impaired his right and ability to fully present his defenses" on self-defense and necessity.

¶22. At the time Smith was convicted, precedent allowed a jury to be instructed on "pre-arming." The purpose of the instruction was "to inform the fact-finder that one cannot arm himself in advance when he is not in any physical danger, go forth and provoke a confrontation or difficulty with another, shoot the other, and then attempt to hide behind a

---

[2] The dissent contends that "this Court should first address Smith's . . . perfected appeal of the denial of his motion for an out-of-time appeal before we consider an ultimate appeal of his convictions and sentences." But as set out above, the Court has already addressed this issue and resolved it conclusively. In our en banc order dated February 8, 2023, we examined the procedural history of the case, found the appeal had been dismissed through no fault of Smith's own, and determined that in the interests of justice, the appeal should considered. Ultimately, we ruled that "this appeal may proceed on the merits."

A majority of the Court, having determined in the February 8 en banc order that this was a situation "'when justice demands' to allow an out-of-time appeal in criminal cases," and with no party having asked us to revisit that question of the law, the duty of the Court then properly turns to the merits of Smith's direct appeal. We decline the invitation by the separate opinion to revisit any alleged deficiencies in Smith's appeal, as the February 8 order effectively wiped the slate clean by suspending the rules and declaring the notice of appeal accepted. *Cf. Miss. Coll. v. May*, 241 Miss. 359, 366, 128 So. 2d 557, 558 (1961) (declining to reconsider a point of law in part due to "public policy an[d] the interests of orderly and consistent judicial procedure"). In the interest of justice, the appeal should be considered.

smoke screen of self-defense." *Taylor v. State*, 287 So. 3d 202, 204 (¶8) (Miss. 2020). While lawful at the time of Smith's trial, even at that time, the concept of pre-arming instructions were "strongly criticized in a long line of Mississippi cases, allowing the instruction only in those extremely rare incidents where the instruction was supported by the evidence." *Id*.

¶23. After the jury in Smith's case was instructed and he was found guilty, the Supreme Court overruled the line of cases allowing the instruction to be given, finding there was "no legitimate rationale to continue estopping self-defense claims by giving pre-arming instructions—instructions that are almost never affirmed." *Id*.

¶24. Now this Court considers the question of what to do in a case like Smith's, where the instruction was given with no evidence supporting the instruction.

¶25. No objection was lodged at trial to the giving of this disfavored and now abolished instruction. However, as the State argues, "plain error review is appropriate where there has been an intervening change in the law while a case is on appeal." *Kirk v. Pope*, 973 So. 2d 981, 987 (¶13) (Miss. 2007).

¶26. But the hurdle Smith faces at the second prong of plain error, whether there was prejudice, is a high one. Smith argues that because the State was granted a pre-arming instruction, it interfered with the given self-defense instruction. In response, the State argues that because Smith presented no evidence supporting his self-defense claim, he could not have been prejudiced by the trial court's pre-arming instruction. Indeed, as revealed by a

8

thorough search of the record, the only proof at trial was that Smith was the initial aggressor in the conflict with Ryland.

¶27. Therefore, we find that under the unique circumstances of this case, the giving of the now-abolished pre-arming instruction did not prejudice Smith's right and ability to fully present his defenses. The instruction could not undermine his self-defense claim when there was no evidence upon which a rational jury could have found it applicable.

## II. There was sufficient evidence establishing Smith's identity.

¶28. Smith next argues there was insufficient evidence to prove his identity beyond a reasonable doubt. Specifically, he argues the jury only heard a "vague physical description."

¶29. The standard of review for a trial court's ruling on the legal sufficiency of the evidence is de novo. *Carpenter v. State*, 311 So. 3d 1268, 1275 (¶26) (Miss. Ct. App. 2021). "When reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. "Where the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable jurors could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is to reverse and render." *Id*.

¶30. Smith argues the jury only heard a vague description of his identity. But this ignores the fact that each witness identified Smith—including Brown, who had known Smith all his life. First, the jury heard from Chief Allen, who testified the homeowner told him that he

9

heard a gunshot and saw Smith run out of the house. The jury heard the chief testify that as a result of his investigation, he concluded Smith was the aggressor. Critically, he stated he knew Smith before the incident occurred. And regarding any possible concerns surrounding the shooter's identity, he referred back to his investigation, recalling that the homeowner identified Smith as the shooter.

¶31. The jury also heard the homeowner's testimony, who was outside his home when the incident occurred. He stated that Smith and Ryland were inside the house at the time of the shooting. He told the jury he heard a gunshot and saw Smith, whom he had known all his life, run out of the house. The jury also heard Ryland himself testify he was sure Smith shot him.

¶32. Given the ample evidence presented at trial, we find a rational trier of fact could have found beyond a reasonable that Smith committed aggravated assault and possessed a firearm.

**III. The trial court did not err by giving a flight instruction.**

¶33. Smith also argues the trial court erred by giving a jury instruction on flight. Particularly, he argues his "alleged flight was probative of his need to get away" from Ryland.

¶34. This Court reviews the giving or refusal of a jury instruction for an abuse of discretion. *Sheriff v. State*, 156 So. 3d 924, 925 (¶7) (Miss. Ct. App. 2014). "Whether to give a jury instruction is within the sound discretion of the trial court." *Id*. "This Court reviews the jury instructions given as a whole to determine whether the refusal of a particular

10

instruction was in error." *Id*. If the instructions fairly state the law of the case and no injustice is created, no reversible error will be found. *Id*.

¶35. Our Supreme Court has "consistently held that a defendant's flight is admissible as evidence of consciousness of guilt." *Id*. "There are two criteria for the court to consider when determining whether a flight instruction is appropriate: (1) only unexplained flight merits a flight instruction; and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value." *Id*. at (¶10). "Any explanation given in an effort to show an independent reason for flight must not be contradicted by other evidence presented at trial." *Id*.

¶36. While Smith contends his independent reason for fleeing was to get away from "a man who was beating him up," the evidence presented at trial contradicts this contention. Chief Allen testified that his investigation revealed Smith was the aggressor, that Smith shot Ryland, and that Ryland did not have a weapon of any kind. Investigator Steed then testified that Smith appeared to be the aggressor because he only saw injuries on Ryland. The jury also heard Ryland testify that Smith hit him first, shot him under the collarbone, and ran out of the house. Lastly, Deputy McGinnis testified that Ryland stated Smith hit him. There was no evidence presented at trial to support Smith's argument that he fled because Ryland had the upper hand in the altercation.

¶37. Because Smith failed to provide an independent, uncontradicted reason for his flight, we cannot find the trial court abused its discretion by giving the jury instruction.

**IV.    Smith's trial counsel was not ineffective.**

¶38.    Smith lastly argues his trial counsel was ineffective because he failed to make objections throughout his trial.  Specifically, he contends his trial counsel failed to object to the "lay opinions" and hearsay testimony from the investigating officers.

¶39.    "Ineffective-assistance-of-counsel claims should ordinarily be raised in a petition for post-conviction relief, not on direct appeal." *Perrigin v. State*, 353 So. 3d 1108, 1112 (¶25) (Miss. Ct. App. 2023).  "The Court will address such claims on direct appeal when (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate, and the appellate court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id*. "This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id*.

¶40.    "To prevail on a claim for ineffective assistance of counsel, [Smith] must prove that 'counsel's performance was deficient,' and 'the deficient performance prejudiced the defendant.'" *Thompson v. State*, 338 So. 3d 730, 739 (¶49) (Miss. Ct. App. 2022). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. "Moreover, to establish a claim of ineffective assistance of counsel, the defendant must show

12

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

¶41. Smith argues his trial counsel failed to object to the officers' improper opinion testimony. However, this testimony fell squarely within the ambit of Mississippi Rule of Evidence 701, "which allows a lay witness to provide testimony limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Williams v. State*, 355 So. 3d 268, 275 (¶26) (Miss. Ct. App. 2023).

¶42. Each law enforcement officer testified based upon their investigation or their perception of Smith and Ryland. Chief Allen specifically testified that his investigation revealed Smith had a pistol, came to where Ryland was, and shot him after an altercation. Also, Investigator Steed testified that Smith appeared to be the aggressor because he "he did not see any injuries on Smith and [he] did on Mr. Ryland." Furthermore, Deputy McGinnis testified that Ryland told him that Smith had hit him first and was the person who shot him.

¶43. Nonetheless, "[r]egarding the argument that trial counsel failed to make hearsay objections, this Court has held that counsel's choice of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." *Carnley v. State*, 348 So. 3d 1071, 1079 (¶42) (Miss. Ct. App. 2022).

13

¶44. Because Smith cannot show his trial counsel was deficient, his ineffective-assistance-of-counsel claim is without merit.

## CONCLUSION

¶45. We find the pre-arming jury instruction resulted in harmless error, as Smith could not prove he was prejudiced. Next, we find there was sufficient evidence establishing Smith's identity. We also find the trial court properly instructed the jury on flight. Lastly, we find Smith's trial counsel was not ineffective.

¶46. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J.**

**EMFINGER, J., DISSENTING:**

¶47. Smith's trial counsel filed an untimely post-trial motion and then filed an untimely notice of appeal of Smith's convictions and sentences. Recognizing this problem, Smith, pro se, filed a motion for an out-of-time appeal, alleging ineffective assistance of counsel, which the trial court denied. Smith then filed a pro se appeal of the denial of his motion for an out-of-time appeal. That is the origin of the appeal in this case. Yet "through a series of unfortunate events," this case has now morphed into a direct appeal of Smith's convictions and sentences. By deciding this case on the merits of a direct appeal, we ignore the fact that the trial court denied Smith's request to bring an out-of-time direct appeal. We have not addressed whether the trial court abused its discretion in denying an out-of-time appeal, which was the first appeal perfected. Instead, the majority has decided that it is more efficient

14

to just go ahead and decide the case on the merits. However, because I find that the direct appeal of Smith's convictions and sentences is not properly before the Court at this time, I respectfully dissent.

¶48. Walter Smith was tried and convicted in the Circuit Court of Humphreys County, Mississippi, on February 28, 2018, and March 1, 2018. He was found guilty of aggravated assault in Count I of the indictment and guilty of possession of a firearm by a felon in Count II. Because Smith was tried in absentia, the trial court set off sentencing and issued a bench warrant for his arrest. Smith appeared before the court, a year later, on March 1, 2019, and was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections (MDOC) for Count I and ten years in the custody of MDOC for Count II. The sentences were ordered to run consecutively. The "Jury Verdict and Sentencing" order was entered on March 14, 2019.[3]

¶49. On April 17, 2019, Smith's trial counsel filed a "Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for a New Trial." On October 4, 2019, Smith filed a pro se supplement to this motion. Pursuant to Mississippi Rule of Criminal Procedure 25.1(c), Smith's post-trial motion was required to be filed within ten days after the entry of the court's judgment on March 14, 2019. An order denying the motion as untimely was signed by the circuit judge on October 25, 2019, and was entered on

_____

[3] Although Smith had been convicted a year earlier, Mississippi Rule of Criminal Procedure 26.2(b) requires that the judgment of conviction and order of sentencing be entered together after sentencing.

November 1, 2019. On November 25, 2019, Smith's trial counsel filed a Notice of Appeal.[4]

¶50.    Because Smith's trial counsel's post-trial motion was not timely filed, it did not toll the time to perfect an appeal of his convictions and sentences.  In a similar case, this Court held in *Nalls v. State*, 344 So. 3d 310, 315 (¶13) (Miss. Ct. App. 2022):

> Because neither motion was filed within the ten-day period, the time for filing the notice of appeal was not tolled. M.R.A.P. 4(e). Additionally, Nalls' notice of appeal was not filed by his attorney until May 27, 2021, beyond the thirty days after the court entered the sentencing order. Therefore, Nalls' notice of appeal was not timely filed. M.R.A.P. 4(a).

¶51.    On January 9, 2020, Smith filed a pro se "Defendant's Motion for Out-Of-Time Proper Appeal." In this motion he acknowledged that his counsel's post-trial motion was not timely filed, and, as a result, his time to perfect an appeal had passed. He asked that the trial court grant his motion for an out-of-time appeal due to the alleged ineffectiveness of his counsel. On May 28, 2020, the trial court entered an order denying Smith's pro se motion for an out-of-time appeal due to a lack of evidence of good cause for granting the motion.

¶52.    On July 20, 2020,[5] Smith filed a pro se notice of appeal from the May 28, 2020 order denying his motion for an out-of-time appeal with the circuit clerk. In this notice, Smith

---

[4] As will be discussed, this notice of appeal was not timely filed. In any event, the circuit clerk did not immediately forward the notice to the supreme court clerk as required by Mississippi Rule of Appellate Procedure 3(d); instead, the circuit clerk waited over eight months to forward a copy of the notice and a copy of the judgment of conviction and sentencing order to the supreme court clerk. It was forwarded by the circuit clerk after Smith, pro se, had perfected his appeal of the circuit court's denial of his motion for an out-of-time appeal, as will be addressed.

[5] Smith signed the notice of appeal on June 25, 2020.

16

included a "Designation of the Record" in which he designated:

> All clerk's papers and exhibits filed, taken or offered in Cause No. 6790,[6] to include, but not limited to:
>
> 1. A transcript of the trial of this case, including voir dire and all in chambers conferences, and all exhibits offered and marked for identification or admitted into evidence.
> 2. All jury instructions filed or granted.
> 3. All orders in Cause No. 6790 and **order denying motion for out of time appeal.**

(Emphasis added).

¶53. On July 28, 2020, the supreme court clerk received[7] and filed the document that included a notice of appeal, a designation of record, a certificate of compliance, and a motion to appeal in forma pauperis (IFP). With this document, the supreme court clerk also received and filed the "Order Denying Motion for Out-of-Time Appeal." Because there was no filing fee included with the documents, on July 28, 2020, the supreme court clerk sent the circuit court clerk notice to either forward the filing fee within seven days or forward a copy of an

---

[6] The motion for an out-of-time appeal filed by Smith, the order denying the motion, and all subsequent filings were all filed in the underlying criminal cause number. Pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2020), the motion for an out-of-time appeal should have been filed as an original civil action and given a new civil case number, since an out-of-time appeal was no longer available under Mississippi Rule of Appellate Procedure 4(g) or (h). That was not done in this case.

[7] Pursuant to Rule 3 of the Mississippi Rules of Appellate Procedure, the notice of appeal must be filed with the clerk of the trial court. The trial court clerk is required to transmit that notice, along with other information set forth in the rule, to the supreme court clerk. The rule requires that the notice "designate as a whole or in part the judgment or order appealed from."

17

order allowing Smith to proceed IFP.

¶54.    On August 3, 2020, after the appeal of the denial of the motion for an out-of-time appeal had been perfected, the circuit court clerk transmitted to the supreme court clerk the other notice of appeal that had been filed with the circuit court clerk by Smith's trial counsel on November 25, 2019.[8] *With this notice of appeal*, the circuit court clerk sent a copy of the "Jury Verdict and Sentencing" order, which had been filed in circuit court on March 14, 2019.[9]  In response to this submission by the circuit clerk, the supreme court clerk sent out a notice that no certificate of compliance had been received as required by Rule 11(b)(1) of the Mississippi Rules of Appellate Procedure and that a copy should be provided to the supreme court clerk. On November 5, 2020, the supreme court clerk sent Smith's trial counsel a notice, pursuant to Rule 2(a)(2) of the Mississippi Rules of Appellate Procedure, of deficiencies concerning this notice of appeal that the appeal would be dismissed if the deficiencies were not corrected within fourteen days.

¶55.    Getting back to the track of the original appeal, on September 2, 2020, the supreme court clerk sent a letter to the circuit court judge requesting the status of Smith's pro se

---

[8] In a cover letter, the circuit court clerk attributed the tardy transmission of the notice of appeal to the fact that it was received by a new staff member. The circuit court clerk stated she was unaware that this November 25, 2019 notice of appeal had been placed in the file.

[9] The supreme court clerk filed this notice for a direct appeal in the same appellate cause number that had already been opened for the appeal of the denial of an out-of-time appeal arising from the same circuit court cause number.  The July 20, 2020 notice of appeal (docketed here on July 28, 2020) and the November 25, 2019 notice of appeal (subsequently docketed here on August 3, 2020) began the confusion of the issues here.

18

request to proceed IFP. On October 5, 2020, the supreme court clerk received a copy of an order from the circuit court judge denying Smith's pro se request to proceed IFP in the appeal of the denial of his motion for an out-of-time appeal.

¶56. On November 20, 2020, the appeal was dismissed by the supreme court clerk for failure to pay the cost of the appeal. It is unclear whether this was the result of the denial of the IFP status for the appeal of the denial of the out-of-time appeal or because the fees were not paid within fourteen days of the deficiency notice to Smith's trial counsel's relative to a direct appeal of Smith's convictions and sentences. In any event, the mandate issued on December 11, 2020.

¶57. On June 10, 2021, Smith filed a pro se motion to reinstate his appeal. This motion contained information that related to both the denial of his motion for an out-of-time appeal and his counsel's purportedly direct appeal of his convictions and sentences. However, the basis of his motion was that the appeal was dismissed for failure to pay costs and that the circuit court should not have denied requests for his IFP status. The trial court had denied his IFP status relative to the appeal of the denial of his motion for an out-of-time appeal.

¶58. This motion to reinstate the appeal was presented to this Court. On September 10, 2021, this Court issued an en banc order finding that the circuit court erred by denying Smith IFP status "simply because the circuit court denied his motion for an out-of-time appeal." By this order, Smith was allowed to proceed IFP in his appeal of the May 28, 2020 order denying his motion for an out-of-time appeal, and the appeal was placed back on this Court's

active docket.

¶59. Over the next fourteen months, there were several other actions taken in the circuit court and in this Court dealing with the preparation of the appellate record, appointment and substitution of appellate counsel, and extensions of time for the filing of appellate briefs. Then, on November 14, 2022, new appellate counsel for Smith filed a "Motion for Authorization to Proceed out of Time." This motion recounted much of the procedural history noted above. For the first time in these proceedings, Smith's appellate counsel noted that "there has never been an express authorization for Smith to proceed out of time." Smith's counsel then requested that this Court, pursuant to Rule 2(c) of the Mississippi Rules of Appellate Procedure, find that good cause existed to suspend the rules to allow this appeal to proceed as a direct appeal of Smith's convictions and sentences.

¶60. The "Motion for Authorization to Proceed out of Time" was then presented to this Court. A majority vote of the Court approved Smith's request to suspend the rules and allow a direct appeal of his convictions and sentences to go forward. An order to that effect was entered on February 8, 2023, citing *McGruder v. State*, 886 So. 2d 1, 2 (¶4) (Miss. 2003), which held:

> M.R.A.P. 4(a) and (d) require that an appeal be filed within thirty days after the trial court has ruled on post-trial motions. The rules makes provision for an extension to be granted in the trial court upon motion filed within thirty days after the expiration of the time otherwise allowed. No provision is made authorizing the trial court, sua sponte or on motion filed in that court, to thereafter grant an out-of-time appeal. Whether a trial court has authority to remedy the failure to file timely a notice after the time set by the rules for filing a notice of appeal had expired is doubtful. *Coleman v. State*, 804 So. 2d

20

1032, 1037 (Miss. 2002). However, we may grant an out-of-time appeal "where a person is convicted of a crime and through no fault of his own is effectively denied his right to perfect his appeal within the time prescribed by law by the acts of his attorney or the trial court." *Jones v. State*, 355 So. 2d 89, 90 (Miss.1978). We may suspend Rules 2 and 4 "when justice demands" to allow an out-of-time appeal in criminal cases. *Fair v. State*, 571 So. 2d 965, 966 (Miss. 1990).

¶61. While I agree that *McGruder* clearly supports the ability of appellate courts to suspend the rules, in appropriate circumstances, to allow untimely direct appeals in criminal cases, neither *McGruder* nor any other case cited by Smith match the facts in this case. In *McGruder*, circumstances had caused the trial court to appoint new counsel for McGruder. His original trial counsel had failed to file a timely post-trial motion after McGruder had been found guilty of two counts of murder and one count of arson. *McGruder*, 886 So. 2d at 2 (¶5). The trial court directed newly appointed counsel to "determine the necessity for an appeal of Defendant's case and to so file an appeal after consultation and assessment with the Defendant." *Id*. at (¶2). McGruder's new counsel filed an appeal that proceeded in the normal course. *Id.* This Court, apparently on its own motion, dismissed the appeal as untimely. *Id*. The supreme court, based upon the above, reversed and remanded the case to this Court for a decision on the merits. *Id*. at 3 (¶7).

¶62. There is a similarity and a difference between *McGruder* and the case at bar. In *McGruder,* the defendant filed a pro se motion for an out-of-time appeal with the trial court, which was denied. *Id*. at 2 (¶6). However, McGruder's pro se motion was filed *after* new counsel had perfected a direct appeal, and McGruder did not appeal the denial of his motion.

21

*Id.* In the present case, there was no intervention by the trial court to appoint new counsel for purposes of considering an appeal of Smith's conviction and sentence. Further, Smith perfected the appeal of the denial of his motion for an out-of-time appeal *first*!

¶63. We have cases where appellate courts have suspended the rules and allowed untimely appeals to proceed, such as *McGruder*. We also have cases where, pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, defendants' motions for an out-of-time appeal have been denied by the trial court, and an appellate court has reversed that decision and allowed direct appeals to proceed out of time. *See Triplett v. State*, 579 So. 2d 555, 559 (Miss. 1991). But we have no case that I have found where a defendant's motion for an out-of-time appeal has been denied by the trial court, an appeal of that decision has been perfected, but then, rather than deciding whether the trial court abused its discretion in denying the motion, we have simply suspended the rules and ignored the trial court's decision.

¶64. Under the peculiar facts of this case, I would find that this Court should first address Smith's first perfected appeal of the denial of his motion for an out-of-time appeal before we consider an untimely appeal of his convictions and sentences.

**WILSON, P.J., JOINS THIS OPINION.**